Castello v. St. Louis Circuit Court.

---

## CASTELLO v. ST. LOUIS CIRCUIT COURT.

28 259
97 347
28 259
123 539
28 259
164 53

1. Where an inferior judicial tribunal declines to hear a cause upon what is termed a preliminary objection—as where, in a statutory proceeding instituted to contest the election of a sheriff, the court refuses to try the cause upon the merits but dismisses the same and quashes the proceedings on the ground that the contestant had not given the notice required by the statute—a mandamus will lie from the supreme court commanding the inferior court to reinstate the cause upon its docket and proceed to try the same, if such court had misconstrued the law in such preliminary matter. (SCOTT, Judge, dissenting.)

2. In proceedings instituted under the act regulating elections to contest the election of a sheriff, the contestant must, as required by the fifty-fifth section of said act, give notice in writing within twenty days after the votes are officially counted; the essential constituents of the notice in such case are set forth in the fiftieth section of said act; only one notice is contemplated or required.

3. Should the contestant not give the required notice, the court should quash the proceedings.

### *Application for Mandamus.*

This was an application to the supreme court for a mandamus directed to the St. Louis circuit court. The following is the petition for the mandamus:

"To the honorable the judges of the supreme court of Missouri—October term, 1858—the petition of James Castello is respectfully submitted. Your petitioner states that at the late general election in and for St. Louis county, Missouri, held on the first Monday in August, 1858, being the second day of said month, he was duly and legally elected and chosen sheriff of the said county of St. Louis according to the statute in such case made and provided; that at the

time when your petitioner was so elected to said office of sheriff, he was and still is qualified to fill the same, and was and still is competent and eligible thereto by law. Your petitioner avers that at the said election he received a larger number of the legal votes cast than any other candidate for the said office of sheriff. That notwithstanding what is above stated, one Michael S. Cerre, who was a candidate for the same office at said election, and who in fact and truth received a less number of the legal votes cast thereat than your petitioner, obtained a certificate of his election to said office under the twenty-first section of the act to regulate elections, approved December 8, 1855, (R. C. 1855, p. 698,) as having received the highest number of votes cast at said election. And your petitioner avers that on the 11th day of August, 1858, the said Michael S. Cerre gave bond and qualified as sheriff of said county, and has been ever since exercising the duties thereof by virtue of his said pretended election. That the votes cast at said election were officially counted on the 7th day of August, 1858. That afterwards your petitioner took the following steps to contest the election of said Michael S. Cerre to said office and to establish his (petitioner's) own right thereto ; that is to say, on the 17th day of August, 1858, your petitioner caused to be served upon said Cerre a notice, of which the following is a copy : ' To Michael S. Cerre, Esq. : Sir — You are hereby notified that I claim that at the late election for sheriff of St. Louis county, Missouri, held on the 2d day of August, 1858, being the first Monday of said month, in the city and county of St. Louis, I was duly and legally chosen sheriff of said county of St. Louis, and that I shall contest your right to hold said office, I being in fact entitled to the same according to the statute in such case made and provided. St. Louis, August 17, 1858. James Castello.' The said notice was given in accordance with the provisions of section fifty-five of the aforesaid act to regulate elections, (R. C. 1855, p. 706,) and after being served was filed in the office of the clerk of the circuit court of St. Louis county on said 17th day of August, 1858.

That on the 18th day of September, 1858, your petitioner
caused to be served on said Michael S. Cerre another notice
in writing in accordance with the provisions of section fifty
of said act to regulate elections, (R. C. 1855, p. 705,) fully
specifying the grounds on which he intended to rely in con-
testing the election of said Cerre to said office, also stating
therein sundry objections to voters at said election, who had
voted at said election for said Cerre, and giving therein the
names of said voters to about the number of nine hundred.
This last mentioned notice was served on said Cerre fifteen
days before the regular October term of said circuit court of
St. Louis county, which was begun and held on the 4th day
of October, 1858, and was filed in the office of the clerk of
the said circuit court on the 18th day of September, 1858.
Said last mentioned notice is fully and truly copied in the
transcript hereto annexed, beginning on page two and ending
on page twenty-seven thereof.    And your petitioner avers
that afterwards and in accordance with the provisions of
section fifty-eight of said act to regulate elections, (R. C.
1855, p. 706,) said Cerre caused to be served upon your
petitioner six days before said October term of said circuit
court, beginning as aforesaid, a notice in writing, denying
all the allegations in your petitioner's said notice of Septem-
ber 18th, and requiring proof thereof, and also setting forth
much specific matter of objection against your petitioner's
right to said office, and specifying the names of four or five
thousand persons who, he therein alleged, illegally voted for
your petitioner at said election, with specific objections to the
qualifications of said persons to vote at said election.    Said
last mentioned notice is fully and truly copied in the tran-
script hereto annexed, commencing on page thirty-one and
ending on page one hundred and thirty-one thereof, and was
filed in the office of said clerk on the 6th of October, 1858.
That afterwards, on the 11th day of October, 1858, that be-
ing the 8th day of the October term of said court in said
year, said circuit court, on the motion of said Cerre, refused
to comply with the directions contained in section sixty of

said act to regulate elections and try said cause on the merits, and quashed and annulled all the proceedings therein on the part of your petitioner to contest said election of said Cerre to said office, and struck your petitioner's said cause from the docket for the reason that your petitioner's said notice of September 18, 1858, specifying the grounds on which he intended to rely in his contest and giving his objections to qualifications of voters for said Cerre, with the names of said voters, had not been served on said Cerre within twenty days after the votes of said election had been officially counted. The court held that, for the reason aforesaid, there was no jurisdiction, power or authority in the said circuit court to try the said cause. And it was for no other cause or reason that the said circuit court quashed your petitioner's said proceedings and refused to try said contest, and struck the cause from the docket of said court. Now inasmuch as the cause of your petitioner is one of great public concern and he is advised that there is no remedy by which the wrongs above complained of may be redressed save by the process of mandamus, he prays this court to exercise the superintending control, which it possesses, of the said circuit court, in his behalf, by awarding against the said circuit court a writ of mandamus *procedendo*, commanding and requiring the said circuit court of St. Louis county, without further delay, to reinstate, take cognizance of, and try upon its merits, the cause of your petitioner against the said Michael S. Cerre, or to return into this supreme court sufficient reasons and causes why the same should not be done; and your petitioner prays for such other process, orders and remedies as may rightfully appertain to his case; and, as in duty bound, your petitioner will ever pray," &c.

This petition was duly verified by the oath of the petitioner James Castello.

The supreme court having announced its determination to award an alternative mandamus, the issuing of the writ was waived by the parties, and it was agreed that the judge of the circuit court should put in an answer to the above peti-

tion as to an alternative mandamus, setting forth the points ruled by him and his reasons for refusing to enter upon the adjudication of the cause of Castello v. Cerre. This agreement and understanding was communicated to Judge Lackland, of the circuit court, in the form of a note addressed to him by the counsel of both Mr. Castello and Mr. Cerre. The following is the response of Judge Lackland:

" Messrs. Glover, Thomas and Hill.

" Gentlemen—I received your note of 30th ult. and cheerfully comply with your request, and submit the points and propositions raised and discussed in the matter of the contested election of the sheriff of St. Louis county, and the decision of the court thereupon and the reasons given therefor, as well as I can now recollect them.

" On the 4th of October, 1858, as appears by the record, Castello, by his counsel, submitted to the court a motion for the appointment of three discreet persons to count the ballots cast for Cerre and himself respectively for the office of sheriff at the last August election, and, before any action was taken upon this motion, the counsel of Cerre interposed a motion to quash and dismiss the proceedings upon the ground that there had been no sufficient notice served upon Cerre as required by the act concerning elections. The court decided that the motion to quash would be considered first in order. It appeared that Castello had served two notices upon Cerre, one a general notice served on the 17th of August, 1858, and the other a special notice, served on the 18th of September, 1858. The former notice appeared to have been served by Thomas Chadbourne, by delivering a copy thereof to Cerre on the 17th of August, 1858 ; and the second notice appeared to have been served as follows : Thomas Talis had made three copies thereof and delivered one to Samuel Simmons, another to Stephen Rice, and a third to Edward J. Castello. Samuel Simmons, on the 18th of September, 1858, delivered his copy to Thomas C. Reynolds, Esq., attorney for Cerre. Stephen Rice delivered his copy to Thomas M. Barron, the deputy and clerk of Cerre, on the

date last above mentioned. Edward J. Castello delivered his copy on said day to a white person over the age of fifteen years at the farm of Cerre, in the county of St. Louis, state of Missouri.

· " The objections to these notices were various. The notice served on the 17th of August, 1858, was objected to upon the grounds that it was too general ; that it stated nothing more than that Castello had been elected sheriff and that Cerre had not ; that it did not specify any grounds on which Castello intended to rely ; nor did it state any objections made to qualifications of any voters ; nor did it give any of the names of any voters objected to as required by section fifty of the act to establish and regulate elections. As to the second or special notice, it was objected that the service thereof was illegal ; that the common law mode of serving a notice was by personal service, that is, either by reading the notice or delivering a copy thereof to the person to be notified ; and that the common law mode of service in this matter was a ' provision by law' within the intent and meaning of section twenty-two of the fifth article of the practice act, and that the said twenty-second section and following sections did not apply, and therefore there was no legal service of said special notice. The court decided that the provisions in section twenty-two of the above mentioned article were applicable ; that if such a construction be given to said sec-. tion twenty-two, there would be no grounds for that and the other sections in relation to the service of notices upon which to stand ; and that the true construction of the twenty-second section is, that all notices may be served in the manner provided in the section immediately following the twenty-second, unless otherwise provided by statute law ; that the services of the notice made by Samuel Simmons and Stephen Rice were good *prima facie*, and the service made by Edward J. Castello was bad, because it did not state that the copy was delivered at the *usual place of abode of Cerre.*

" It was intended on the part of Castello that Cerre had by his appearance waived all right to question the legal suffi-

Castello v. St. Louis Circuit Court.

ciency of the notices, as well as the service thereof; that as evidence of such waiver he had given Castello a counter notice of contest six days before the term of the court; and that he had appeared there in court by filing his motion to quash. The court was of the opinion that these facts did not amount to a waiver; that a party might very well be considered in court for the purpose of quashing a writ or the service thereof and not for any other purpose; that Cerré was *compelled* to give his counter notice six days before the term of the court or forfeit his right to contest on his part; and that the mere doing of that which he was compelled to do or endanger his right, ought not to be construed into a waiver; that it seems to be the object of the statute to give the notice a double operation, that is, to bring the party into court and to set forth and advise the court of the grounds of contest; that the notice required by the statute seemed designed to stand in lieu of and perform the functions of a writ and petition in an ordinary suit; and it would seem to be just as unreasonable to say that the contestee could not appear in court and object to the notice upon the ground that it is insufficient in law, as to say that a defendant could not appear in court and demur to a petition in an ordinary suit.

" The right of a party to contest an election is a creature of the statute, and unless he have saved that right by giving notice as required by the statute, it must be conceded it has become forfeited, and he will not be allowed to assert it over the objections of the party whose election he seeks to contest. And thus arose the question whether Cerre had been notified by Castello as required by the act concerning elections. The notice served on the 17th of August is insufficient because it is too general, and because it failed to specify any grounds upon which the contestant intended to rely; nor did it specify any objection to the qualification of any voters, nor did it give their names as required by the fiftieth section. And as to the special notice which was served on the 18th of September, it was objected that that was not

served within twenty days after the official count of the votes as required by the fifty-fifth section.

"If it be true that a correct reading of the statute requires two notices to be given by the contestant to the contestee — one to be a general notice under the fifty-fifth section, which is to be served within twenty days after the official count of the votes, without regard to the space of time between the election and the term of the court at which the contest is triable ; and the other, a special notice under section fifty, specifying the grounds of the contest, which is to be served fifteen days before the term of the court at which the contest is triable, and without regard to the space of time between the election or the official count and the term at which the contest is triable, then there was error in sustaining the motion to quash and in dismissing the proceedings. But if the statute requires one notice only, which must set out the grounds upon which the contestant intends to rely and which must be served within twenty days after the official count and fifteen days before the term of the court at which the contest is triable, it is submitted that the action of the court in sustaining the notice to quash was correct, because no such notice appeared to have been given ; and this was the result at which the court arrived upon the reading of the statute adopted by it. In the vindication of which the following remarks are respectfully submitted.

"And first, it may be proper for me to say that two notices for one and the same purpose might properly be regarded as a work of supererogation if not an anomaly in the law, and that the statute ought not to be read consistently with any such idea unless two notices are provided for expressly or by irresistible implication. I am aware that an argument is made in favor of two notices, based upon notions of equity towards the contestee ; that the first or general notice is simply to inform him his election will be contested, which is to be served upon him within twenty days after the official count ; and after that and fifteen days before the term of the court at which the matter. is triable, he is to receive the

Castello v. St. Louis Circuit Court.

special notice informing him of the specific grounds. In answer to this argument, it may be said that in the working of the statute it is by no means certain that the general notice will be received before the special one, as I shall hereafter endeavor to demonstrate ; but suppose that would be so invariably, it seems clear to me that such a mode of proceeding would be greatly to the disadvantage of the contestee. Suppose, if you please, that the contest be instituted in a county in which the first term of the court is six months after the election. The contestee receives the general notice within twenty days after the count, which really imparts no useful information to the contestee, because it specifies nothing. He may know that an attempt will be made to strike him ; but with what or when the blow is intended to be planted he has no reliable information until within fifteen days of the time when the cause may be called for trial; and the contestee is compelled to give his counter-notice six days before the term of the court. The result of which is that the contestant has five and a half months to fix up the pleadings and arrange the facts of his case under the blind of a general notice before he is compelled really to show his hand, while the contestee has only nine days to prepare what case he may have to present against the contestant. It would indeed seem to me that such a construction would not work very equitably towards the contestee. Again, if the above constructions requiring two notices be equitable towards the contestee, and that is the idea which is to govern us in reading the statute, it is contended there is a stronger claim upon that ground for the construction requiring one notice only. If a notice be given specifying the grounds set forth in section fifty and served within twenty days after the count and fifteen days before the term of the court, he has all the information the two notices can give, and it may be at a much earlier stage of the proceedings.

" Secondly. Does the section fifty-five in itself considered provide expressly or impliedly that the contestant shall serve a notice upon the contestee independent of the notice pro-

vided for by the section fifty ; or does the fifty-fifth section merely operate as a limitation of the notice provided by the fiftieth section ? If the fifty-fifth section be regarded merely in the light of a limitation or as an additional regulation of the notice provided for by the fiftieth section, no difficulty of importance is perceived in the reading the statute, so far as this question is concerned, so as to give entire unanimity and harmony to the various sections bearing upon the subject. It will be admitted that the proper rule in construing a statute is to take the sections or parts of it bearing upon the same subject matter and read them all together; and if any portion of the statute, by reason of its phraseology, is capable of bearing two constructions, one of which will cause the various parts to harmonize and have a practical operation, and the other will cause a conflict on the working of the various provisions, and result in impracticabilities, we are compelled to adopt as the legislative will that construction which will give harmony and effect to the statute in all its parts. Let us suppose, for the sake of argument, that the fifty-fifth section provides affirmatively for a notice distinct from and independent of that provided for by the fiftieth section, and see what would be the inevitable result of such a construction. If the fifty-fifth section provides affirmatively for a separate notice, the contestant, as a matter of absolute right, has twenty days after the *official count of the votes* in which to serve it, and this right can in nowise be affected by the date of the election or the time of the term of the court at which the contest may be *called* for trial. Now it will be seen that the fifty-first section requires the contest to be tried by the court at the first term held twenty days after the *election;* and if the election of any county officer other than sheriff or coroner be contested, by the sixtieth section, it shall be tried at the first term held fifteen days after the election, unless continued for cause or by consent. Let me ask, how can it be that the contestant has an absolute right twenty days after the *official count,* (which must be some day or two after the election,) to serve the gen-

eral notice under the fifty-fifth section, when he may be forced into a trial of contest before the court under the fifty-first section or sixtieth in fifteen or twenty days after the *election?* It seems clear that the contestant can not in the nature of things be entitled as a matter of right to have twenty days after the *count* to serve his general notice, when he may be forced into trial in fifteen or twenty days after the election, and that such a construction must necessarily bring the fifty-fifth section in conflict with sections fifty-one and sixty, which regulate the time of trying the contest.

" There is another test to which I wish to subject this argument, which contends that two notices are required. The statute under which this proceeding is had is general; its operation is co-extensive with the limits of the state; and, in our endeavors to read it so as to carry out the will of the legislature, it is deemed proper and fair to consider its operation beyond the limits of St. Louis county. There are in this state some eight or ten counties in which the fall term of the circuit court commences on the first Monday in September. In order that we may apply this test, let us suppose that the matter of this contested election had arisen in any one of those counties. The election was held on the 2d day of August, and the official count was made on the 7th of the same month. The first Monday in September came on the 6th day of that month. Now agreeably to the argument, the contestant has until the 27th of August to serve his general notice under the fifty-fifth section. By the fiftieth section he is compelled to serve his special notice fifteen days before the 6th of September, which would require it to be served on the 21st of August, and thus it is shown that the special notice under section fifty would be served six days before the general one under section fifty-five. There are a number of other cases which might be presented if deemed necessary, which show the same result of such a construction of the statute.

" Third. Having attempted to show that the fifty-fifth section does not provide for an independent and separate

18—VOL. XXVIII.

notice, because the statute in all its provisions bearing upon the same subject matter can not be read consistently with such a construction, let us now endeavor to examine the phraseology of the fifty-fifth section in order to gather what light we can tending to show the will of the legislature in framing it. It is in these words : ' No election of any county officer shall be contested unless legal notice of such contest be given in writing to the opposite party within twenty days after the votes are officially counted.' It will be observed that this section affirms nothing. It is simply a conditional negative. Unless legal notice of such contest in writing be given within twenty days after the count the contest is prohibited. What are we to understand to be the meaning of the words ' legal notice of such contest ?' What is a legal notice of a contested election ? What must be the form and contents of a document to make it come up to the standard of a legal notice ? I might, perhaps, more properly ask, where can the standard of a legal notice of a contested election be found ? I am not aware that there is any such thing as a legal notice of a contested election at common law, and therefore we can get no aid in our inquiry from that quarter. And it is respectfully submitted that the proposition is beyond solution, unless we conclude that the legal notice of contest mentioned in the fifty-fifth section refers to the notices provided for by sections fifty and fifty-seven, and in this view the solution is easy. If the legislature intended by the fifty-fifth section to make it incumbent upon the contestant to give the contestee a common notice which would simply inform him that his election would be contested, why did they employ the technical and guarded language of "legal notice in writing of such contest ?" It seems to me that, as the legislature have given us in sections fifty and fifty-seven the requisites and the standard of a legal notice of a contested election, by the use of the language employed in the fifty-fifth section they simply mean the statutory notices provided for in sections fifty and fifty-seven.

"In pursuance of the views which are herein endeavored

to be expressed, the court came to the conclusion, 1st, that the general notice served on the 17th of August was insufficient in law, because it specifies no grounds upon which the contestant intends to rely as required by the fiftieth section of the act concerning elections; 2d, that the notice served on the 18th of September was insufficient in law because it was not served within twenty days after the official count as required by the fifty-fifth section; 3d, that the legal effect of both papers, with the service thereof, as appeared to the court, was insufficient to constitute legal notice to the contestee as required by said act; 4th, that the fifty-fifth section absolutely prohibits the court from trying the contest upon its merits, because legal notice of such contest did not appear to have been given.

"Respectfully, &c.,

"J. R. LACKLAND."

*S. T. & A. D. Glover* and *Leonard*, for Castello.

I. The mandamus should issue and be made peremptory. The proceeding to contest the election of a sheriff under our statute is a proceeding not according to the course of the common law. No appeal or writ of error lies upon the record in such case. Unless therefore the case is one which the supreme court will revise through *certiorari* or *mandamus*, there is no remedy for any wrong that may be committed by a circuit judge in such cases. If in any case not proceeding according to the course of the common law, the statute law is departed from and a judgment erroneously rendered against a party, whose rights can only be restored by annulling that judgment, since no other remedy exists, the wronged party may have a *certiorari* and thereby quash and annul the whole proceeding. (2 Mass. 441; 5 Mass. 517; 2 Greenl. 165; 8 id. 163; 1 Yerg. 92; 3 Johns. 23; Walker, 112; 16 Johns. 49; 2 Caines, 179; 2 S. & R. 363; 4 Watts, 305; 4 Rawle, 366; 2 Williams, 592.) If in such a case the party's rights can only be secured by requiring the judge to go forward and execute in his behalf some provision of the

statute which he has refused to execute, the remedy is *mandamus procedendo*. If the justices of quarter sessions refuse to entertain a complaint under an erroneous supposition that they have no jurisdiction of it, or if the hearing be illusory, mandamus lies to command them to do their duty in order to prevent a defect of justice. (Tapping on Mandamus, 279, 280.) Where the quarter sessions, on appeal, decide a point preliminary to the case and refuse to hear it further, no mandamus lies, if the preliminary point is matter of fact only; but if the point involved is one of practice or matter of law, then a mandamus to hear lies. (Tapping, 280-1-3; see also 3 Ad. & El. 744, 985; 5 Barn. & Ad. 597; 2 Williams, 592; 5 Pike, 50; 4 Eng. 240; 7 Eng. Law & Eq. R. 390; 7 Cranch, 577; 1 Eng. L. & Eq. 291; 17 Ill. 128; 14 Ill. 153; 29 Ala. 72; 10 Wend. 293; 4 Wend. 212; 12 Wend. 246; 8 Cow. 133; Hardin, 173; 20 Ala. 334; 5 Engl. 246; 6 Florida, 279; 7 Ala. 460.) The judge of the circuit court had no discretion. His duty of trying the cause, of docketing it and proceeding with trial, was ministerial simply. But mandamus lies to compel performance of judicial as well as ministerial duties. If the duty be judicial, the mandate will be to compel the exercise of the official discretion or judgment without directing the manner of proceeding. (21 Pick. 258.) In the case at bar there has been no use of the judicial discretion. (See 5 Pick. 50.) The result of the cases may then be stated to be, that where an officer or court is requested to perform an act, either administrative or judicial, and they decline acting for some supposed defect in a preliminary matter necessary to give them the power of acting in the premises, this court, in the exercise of its superintending control over all inferior officers and jurisdictions, must of necessity look into such matter and award or refuse a mandamus according to the rights of the parties; otherwise, in all such cases, there would be a defect of justice; and the two cases cited (2 Williams, 592, and 3 Q. B. 744,) seem to proceed on this principle. If a court or officer proceeds to discharge the

duty imposed on them, and commit any error or irregularity in discharging the duty, the effect of the error or irregularity upon the rights of the parties may be corrected by writ of error or of *certiorari*, as the one or the other shall be otherwise applicable, unless the judgment of the court or officer is made final in the matter. But if they refuse to act at all, will not enter upon the discharge of the duty, although for some supposed defect in a necessary preliminary proceeding, this court will compel them by mandamus to act, and restrain them by prohibition when they exceed their authority. In this way the whole ground seems to be covered, and the due administration of the law enforced, and the rights of all persons protected by this court.

II. When the court quashed the proceeding for want of proper notice, all questions of notice and service had been waived by steps taken in the cause on the merits. Cerre had served his counter notice. The parties were fully at issue on the merits. Castello had prepared his case on the merits. Cerre's notice left him no discretion. Is it proper in such case to treat the question of notice as open? (See 2 Engl. 552; 6 How. 605; 1 Morr. 21, 223, 113; 10 S. & M. 563; 2 Scam. 462, 263; 17 Verm. 531; 8 Shepley, 467.)

III. Mr. Castello fully complied with the law in giving notice. The notices given were sufficient.

*Hill* and *P. F. Thomas*, for Cerre.

I. A mandamus will not lie in the present case. (See 2 T. R. 259, 484; Cole on Crim. Inf. 137, 147; Burr. 1454; 4 T. R. 699; 6 Ad. & El. 349; 1 N. & P. 474; 7 Ad. & El. 215, 419, 966; 11 Ad. & El. 512; 10 Pick. 244; 11 Pick. 189; 18 Pick. 443; 19 Pick. 298; 2 Pet. 567; 6 Pet. 216, 661; 7 Pet. 637; 2 Ired. 423; 3 Dall. 42; 2 Bibb, 573; 8 B. Monr. 651; 2 Ired. 430; 1 Pike, 11; 1 Ala. 15; 6 Ala. 511; 18 Wen. 79; 8 Pet. 291; 1 Den. 644, 679; 20 Wend. 663; 2 Hill, 363; 21 Wend. 20; 3 Johns. cas. 79; 5 Hill, 616; 1 Cow. 417; 1 Pet. 567; 13 Pet. 279; 7 Pet. 634; 1 Green. 97; 1 Halst. 157; 20 Barb. 302; 12 Gratt.

266; 26 Ala. 133; 4 Texas, 329; 9 Texas, 250; 3 Mich. 437; 10 Gratt. 650; 25 Ala. 72; 14 Ark. 368; 21 Ala. 772; 1 Ohio, State, 30; 14 How. 24; 6 Texas, 457; Beawe's, Abr. tit. Mandamus; 5 Barn. & Ad. 1011; 1 Eng. Law & Eq. 291; 4 B. & Ald. 300; 3 Dall. 42; 17 How. 284; 14 Pet. 497; 6 How. 92; 3 Pike, 427; 3 Binn. 273; 5 Halst. 57; 2 Harr., N. J., 355; 2 Cow. 458, 479; 7 Cow. 363.)

NAPTON, Judge, delivered the opinion of the court.

Upon the facts disclosed in the petition in this case for a mandamus upon the circuit court, a majority of this court determined that a conditional mandamus should be awarded, and it was accordingly so ordered. This determination was based upon the principle that where an inferior judicial tribunal declines to hear a case upon what is termed a preliminary objection, and that objection is purely a matter of law, a mandamus will go, if the inferior court has misconstrued the law. The cases of the King v. The Justices of the First Riding of Yorkshire, 5 Barn. & Adol. 667, and Rex v. The Justices of Middlesex, 5 B. & Ad. 1113, The King v. Hewer, 3 Ad. & Ellis, 715, and Regina v. The Recorder of Liverpool, 1 Eng. Law & Eq. R. 291, are believed to be conclusive upon this point so far as the English authorities go; and our attention has not been directed to any American cases conflicting with this view of the law. If the circuit court declined to go into the merits of the case because the party complaining had not given the notice required by the statute, that was a preliminary objection upon a point of law which this court can review upon a writ of mandamus; and if the circuit court called for a notice which the statute did not require, the mandamus ought to be made peremptory.

It is not deemed important to go into any extended examination of this question, since upon the return to the conditional mandamus by the circuit court, we were satisfied that the construction which that court gave to the statute was correct. The fifty-fifth section of the election law (R. C.

1855, p. 706) provides that a legal notice in every contested election of a county officer must be given within twenty days after the official count. This is the longest period allowed for such notices. It may be requisite to give them before the lapse of twenty days, but they can not be deferred beyond that period in any case. The essential constituents of the notice in the case of sheriffs are stated in the fiftieth section. The notice in this case was not given within twenty days after the official count, and we are therefore of opinion that the peremptory mandamus be refused.

SCOTT, Judge. At the last August election Michael Cerre and James Castello were candidates for the office of sheriff in St. Louis county. Cerre, according to the count, having received the greater number of votes, was declared to be elected. A certificate of election was delivered to him and he qualified according to law. Castello contested the election of Cerre and gave him what he supposed to be the notice required by the statute. The cause coming on to be heard in the circuit court, the notice of the contest was produced in evidence, and, Cerre objecting to its sufficiency, the court ruled it out, and, being of the opinion that the notice required by the statute had not been given, dismissed all further proceedings in the cause. Upon this state of facts, Castello, assuming that no appeal or writ of error would lie, applied to this court for a mandamus to compel the circuit court to proceed with the hearing of the cause. This application raises the sole question whether, according to the principles of law, a mandamus is the appropriate remedy to attain the end sought by Castello.

At this stage of the pleading we have nothing to do with the correctness of the decision of the circuit court. We do not say whether it was correct or incorrect. It will not be denied but that Castello, in his contest, in order to succeed, must show two things at least; first, that he gave the notice required by law; secondly, that he received the greater number of legal votes. It will not do to prove one of these re-

quirements. He must prove both. The proof of one without the other is as fatal in law as if neither had been proved. This, it is presumed, will not be controverted. If then the circuit court proceeded so far in the hearing of the cause as to determine that the legal notice had not been given, was not the controversy then terminated, and terminated, too, on its legal merits? Cerre had the office. It was competent to the general assembly to make his certificate of election final and conclusive as to his right to the place. This however has not been done. The law has given a right to his unsuccessful opponent to contest his election. This has not been granted absolutely, but on a condition. That condition is that he shall give the notice of his intention to contest required by the statute. Now if he omits to do this, he must fail in his contest. The circuit court has heard the cause and has determined that the required notice had not been given, and, being of that opinion, very properly dismissed all further proceedings; for, as the contestant had not given the necessary notice, if the court, after having heard the objections to the notice, had gone on with the trial, and after receiving the whole evidence had been of the opinion that Castello had received the greater number of legal votes, yet if it had been of the opinion that he had neglected to give the requisite notice, it would have been bound to have given judgment against him. Where, then, is the use in commanding the court to proceed with the trial of the cause? What will it profit the contestant? After expending weeks, perhaps months (judging from the record), in trying it, must not the same judgment necessarily be entered that has been already given in the cause? Was it ever heard that after a cause had been tried on its merits in the proper tribunal, that a mandamus would lie to correct the errors of the judgment? Authorities will not be cited on this point. The learning on this subject is too trite to be paraded in citations. Is there a lawyer in this state who, on a point like this being decided against his client, would not take a bill of exceptions to the opinion of the court and bring the case here by appeal or

Castello v. St. Louis Circuit Court.

writ of error? But it is said that no appeal or writ of error will lie in this proceeding. Why not? If the law is so, is it because the statute did not intend that, in cases of contested elections tried by the circuit courts, there should be a review of their judgments, that they should be final? If the statute did contemplate that such proceedings should not be reviewed on appeal or writ of error, that the judgment of the circuit court should be final, did it ever intend that the same thing should be done by a mandamus, thus prostituting that process to a purpose to which it was never before applied? Would not an appeal or writ of error be the most easy, the least expensive, and the most appropriate means for effecting a review; and can we suppose that the legislature would discard them and sanction a mode of correcting the errors of judgment of an inferior tribunal that had never before been applied to such a purpose? But see how a mandamus works as a process for reviewing the judgment of the circuit court. If a review is open to one party, it ought also be to the other. Now if the court had overruled the objections of Cerre to the sufficiency of the notice, and had gone on with the cause, will any body pretend that Cerre could have come here for a mandamus on the circuit court; would not such an application have been laughed out of the court room? What sort of a process is this, then, which would be substituted for an appeal or writ of error — a one-sided process, free to one party to a cause and not to the other?

It may be said that the circuit court, in trying a contested election, not·proceeding according to the course of the common law, is the reason that an appeal or writ of·error will not lie upon its judgments in such cases. If such be the case, would therefore the nature of a writ of mandamus be changed? Could it therefore be made to answer a purpose to which it is not adapted and for which it was never intended? The judgment in this case is a final one in whatever way it may have been entered in the court below; and its errors, if any there be, can not be remedied by a mandamus, for it is

admitted on all sides that a mandamus can not correct the judgment of an inferior court even though it be erroneous. It is most manifest that this court can not grant the writ asked for, or at least no end whatever can be obtained by granting it, unless it is prepared to hold that Castello can .oust the present incumbent without giving any notice of his intention to contest his election; for if the notice be necessary, then its existence is of the legal merits of this controversy; and the court below having decided that it is insufficient, there is an end of this contest, at least so far as it can be affected by the process of mandamus—a process that can require an inferior tribunal to proceed with a cause and enter a judgment on it, but can never interfere with the judgment after it has been entered.

Recent English authorities on the subject of writs of mandamus have been cited, and it is maintained that they furnish grounds for the opinion that the writ of mandamus is the appropriate remedy under the circumstances of the case before us. In Tapping on Mandamus, (p. 280,) it is said, where the quarter sessions on appeal decide on a point preliminary to the whole case, or to the reception of a particular piece of evidence, that they will not hear the cause further, their decision is conclusive if the point involve matter of fact only, but otherwise if it raise a mere point of practice, which the court of king's bench can perceive to be a a point of law; in the latter case a mandamus to hear, &c., will be granted; in the former, not. On the same page it is said that the ordinary practice of the court of king's bench is to grant the writ of mandamus to command magistrates or the quarter sessions to hear and determine or give judgment in cases within their jurisdiction, where they have refused altogether to exercise it; *but no instance can be cited in which the court of king's bench has granted a mandamus to compel them to do a specific act, as to come to any particular decision, for, after they have once decided an appeal, &c., even erroneously, or under a mistake of law, such decision is final and conclusive.* It may be that we do not comprehend

what is understood by the terms "point preliminary" in the above citation. In looking over the cases, it will be seen that the English judges themselves complain that they have been misunderstod. It should be no surprise then that they should mislead those who are so remote from the tribunals in which they are employed. But there is one case among the recent English decisions which serves to show, negatively at least, what is not meant by it, and it is a case which decides a point identical with that involved in the application before us. It is the case of Rex v. The West Riding of Yorkshire Justices, 5 Barn. & Adol. 667. There is another case of the same title, in the same book, at page 1003; but the case to which reference is made is at page 667. There a statute required that ten days' notice of an appeal should be given. After the appeal had been taken, it was, in the language of the English books, respited to one place and then to another. The cause coming on to be heard, it was objected that no notice of the respited appeal had been given, and the court being of the opinion that such a notice was necessary, refused to hear the cause. A mandamus was applied for to the king's bench, and the court was of the opinion it should be granted. The judges said that the notice of the respited appeal was not required by any rule of law or practice of the court, and that the justices had no authority to exact it from the appellant. But they said that if the inferior court had decided on the original notice of appeal—a notice required by statute—they would not have interfered nor granted a mandamus. Reference is made to the opinions of the judges, not to the syllabus of the case. That case is on all fours with this. There the court held that if a statutory notice was adjudged insufficient by the inferior tribunal, they would not control its judgment by a mandamus. So in the case before us, the inferior court has declared that a notice required by statute is not sufficient; then, if the English authority is to have any weight, we can not issue the writ of mandamus. This case is valuable to show what idea is conveyed by the terms "point preliminary." It shows that

where a statute requires a notice and that notice is adjudged insufficient by the inferior tribunal, its judgment will not be controlled by mandamus. It is not deemed necessary to review the other authorities cited, as none of them are found to overrule or explain away the case to which reference has been made.

It is not intended that any thing contained in this opinion should be regarded as an expression of our views on the question whether a writ of error or appeal will lie in this case. It is not true that a writ of mandamus will lie in all cases where there is no other remedy. Before a party is entitled to a mandamus or any other writ, he must have a right. Whether the contestant has any right to a review of the judgment of the circuit court may be a question and is to be shown, and if such right is shown, the writ of mandamus can not be made to assume the office of a writ of error or appeal. If the law contemplated that the action of the circuit court in determining contested elections should be reviewed, then there can be no reason whatever in law for not resorting to those means by which the errors of judgment in that court are corrected in all other cases.

In my opinion, the mandamus ought to be refused.