HANNIBAL AND ST. JOSEPH RAILROAD COMPANY v. MORTON.

SAME v. SAME.

1. Where, in proceedings instituted in behalf of the Hannibal and St. Joseph Railroad Company, under its charter, to obtain the condemnation and appropriation ·of land upon which said railroad had been located, it was stated, in the report of the viewers appointed to assess the damages; that before proceeding to examine the damages they took the oath prescribed by the statute, but the oath itself was not set forth ; held, it not appearing that any objection was made to the report on this ground, that the recital in the report was sufficient to show that the required oath had been taken.
2. The supreme court would not in such case quash the proceedings for the reason that the record thereof does not show affirmatively that the viewers were citizens of the county.
3. The charter of the company not making any provision for bills of exceptions in such cases, they could not be taken ; if taken, they would form no part of the record.
4. The supreme court could not, in such case, quash the proceedings on the ground that the damages allowed by the commissioners were inadequate.
5. Quere, when may writs of certiorari issue from the supreme court, and what is the proper office and function of such writs ?

*Certiorari to Judge of Marion Circuit Court.*

Since the dismissal of the writs of error in these two cases, (see 20 Mo. 70,) the defendants, David and Samuel Morton, petitioned the supreme court to grant writs of certiorari directed to the judge of the Marion circuit court. In obe-

dience to these writs, transcripts of the records in said cases were filed in the office of the clerk of the supreme court, on which said defendants made assignments of error.

The facts, it is deemed, sufficiently appear in the opinion of the court and in the report of the case of Hannibal & St. Joseph Railroad Co. v. Morton, 20 Mo. 70.

*S. T. & A. D. Glover*, for S. & D. Morton.

I. The writ of *certiorari* is the proper process to bring up an unfinished proceeding in an inferior court of record, or a summary proceeding in such court not according to the course of the common law after judgment, .where there is alleged error. (Redfield on Railways, 469; 3 Humph. 145; see 2 Ala. 35; R. M. Charlt. 298; 9 Ohio, 143; 8 Greenl. 293; 5 Binn. 24; 3 Halst. 122; 1 Gill & Jo. 196; 10 Wend. 174; 5 Mass. 423.) The common law writ of *certiorari* may issue to all inferior tribunals in cases where they exceed their jurisdiction or proceed illegally, and there is no appeal, or other mode of directly reviewing their proceedings. (14 Ills. 383; 13 Ills. 660.) No appeal or writ of error lies here. (20 Mo. 70.)

II. The proceedings against the Mortons were contrary to the charter of the company, illegal, and ought to be quashed. The proceedings were not commenced until the road was constructed. (See 10 How. 395; Sess. Acts, 1837, p. 250, § 10; Red. on Railw. 114–5; 10 Wend. 167.) The statement of the clerk that the viewers took the required oath is not what the law required. The oath was to be subscribed and kept to be seen. The record should show that the law has beeen complied with. It does not. There was only nine days' notice of the first assessment of damages. This assessment was therefore a nullity. It was given not by the viewers, but by Joshua Gentry, agent of the company. There was no notice at all touching the last assessment. The order of the clerk entering judgment on the second report was illegal and void. The objections were entered in time, three days after the filing of the report. (See Sess. Acts,

1837, p. 250.)   The judgment was in the face of the statute. When objections were filed, the judge was to consider them and then direct the proper judgment to be entered.

Lamb & Lakenan, for Hannibal and St. Joseph R. R. Co.

I. The decision of the circuit judge upon the report of the commissioners was final and conclusive.   (20 Mo. 70.)

II. The writ of *certiorari* should have been directed to the judge who rendered the decision.   The return should have been made by him personally.   The return to the writ is made by the clerk of the circuit court for Marion county.

III. Writs of *certiorari* can not be substituted for writs of error.   (4 Mo. 251.)   They will not lie where substantial justice has been done between the parties.   (20 Pick. 71; 24 Pick. 181.)   The supreme court can exercise appellate jurisdiction only.   *Certiorari* does not lie after judgment. (1 Tidd's Practice, 330.)   Nor will it lie from a superior to an inferior court except where the former has original jurisdiction.   The proceedings in the present cases were regular. The only objection made by Morton at the time that is now urged is, that the damages were assessed after the road had been constructed by the company.   The record does not show whether damages were assessed before or after the work had been finished or commenced.   The record shows that the requirements of the statutes were substantially complied with.

NAPTON, Judge, delivered the opinion of the court.

These two cases were before this court on writs of error, (20 Mo. 70,) and it was held that the writs of error would not lie in such cases, and the writs were therefore dismissed. The records are now before the court on *certiorari*.

We have no statute here regulating writs of *certiorari*, nor has this court, so far as we are aware, given any construction to the constitutional provision which authorizes this court to issue the writ.   It is not deemed necessary to undertake in this case to determine the exact class or classes of

cases in which this writ may be resorted to. A reference to the English commentators and judicial decisions will readily show that the writ is much more extensively used in that country than it could be here, and under such circumstances which would totally exclude any resort to such a proceeding in this state. Admitting that a *certiorari* is the proper process to bring up a summary proceeding had before an inferior court, not according to the course of the common law and therefore not examinable on error, yet the power of the court which issues the writ is restricted to an examination of such irregularities as occur in the exercise of the jurisdiction of the inferior court and are apparent on the face of the record sent up. Where the inferior court has no jurisdiction at all, the opinion seems to prevail in England that a *certiorari* is not the appropriate remedy, but the party aggrieved must resort to his action of trespass. In this country, it seems to be the opinion of some of the courts that such cases are the very ones in which *certiorari* may be resorted to, and that a principal and leading object of the writ is to restrain the action of inferior magistrates *within* their proper sphere. (Birdsall v. Phillips, 17 Wend. 466 ; Redfield on Railways, § 202 and cases cited.) Without undertaking to decide which of these views is correct, we will proceed to examine the errors assigned in the proceedings now before us. Most of these objections, it will be perceived, are very technical, and do not touch the merits of the proceeding.

The first is, that the record does not show that the oath prescribed by the statute was taken by the viewers. The report of the viewers to the court states that the viewers, before proceeding to examine the land and assess the damages, took the oath prescribed by the statute, but the form of the oath is not copied in the report. As no objection was made by the owners of the land to the report on this ground, we must presume that the oath was in proper form and duly administered; for so the record states, and there is nothing to contradict it. If we require that every minute particular, which

the statutes point out as requisite in such proceedings, shall appear on the face of the record, so that this court may on *certiorari* be enabled to see an exact conformity to every requisition of the law in all the steps of the proceeding, however formal, not many proceedings of this character would be likely to stand. It is no more than a reasonable intendment, in this case, that the oath was substantially the one required, and we take the recital that it was so in the report of the viewers to be sufficient to show this.

It is next objected that it does not appear that the viewers appointed to condemn this land were citizens of the county of Marion. The statute requires the court to appoint citizens of the county, and the record is silent on this subject. We think there is nothing in this objection. Our statute concerning jurors requires them to be " free white citizens of the state, resident in the county, sober and judicious, of good reputation," &c. Would this court reverse a judgment because the record of a trial did not show affirmatively that the jury which tried the case was composed of this class of citizens ?

The third objection is, that the notice given in the first instance was only nine days, when the law required it to be ten. This is true of the first notice ; but the first assessment was set aside and another set of viewers appointed ; and in relation to the second assessment no objection on the ground of notice is made or could have been made, as it seems upon the record to have been legal. The objection to the first notice may be considered as waived, and whether waived or not, it can not affect the propriety or legality of the ultimate assessment which the judge mentioned.

The next objection is, that the proceeding was instituted in the name of Joshua Gentry, who described himself as agent of the company, and not in the name of the Hannibal and St. Joseph Railroad Company. This objection, in point of fact, only applies to one of the cases ; for, on examining the record in the case of David Morton, the proceeding appears

throughout in the name of the Hannibal and St. Joseph Railroad Company. It is substantially so in both cases.

But the principal objection to these proceedings, and the one chiefly relied on, is, that the road had in fact been constructed over the plaintiff's land before the proceedings were instituted, and the proceeding authorized by the statute must precede the occupation of the land. If we confine the office of a *certiorari*, as it is in England, to such cases as are within the jurisdiction of the inferior tribunal whose proceedings are to be reviewed, this objection, if true in fact, would only show that the writ should be dismissed and the party remitted to his action of trespass. But if we adopt what seems to be the practice of the American courts and allow the writ in such cases, the answer to the objection is, that the fact nowhere appears on the record. The writs of error formerly made out in these cases were dismissed, as it appears from the opinion of the court (20 Mo. 74), because the proceedings were before the judge and not proceedings in court. This being so, it is clear that a bill of exceptions could not be taken, for our statutes nowhere make provision for bills of exception in such cases. But the bill of exceptions in this case does not materially differ from the record proper, and there is nothing to show in either that in point of fact the railroad had been constructed before the proceeding was commenced. It is true that on the last motion to set aside the second report this is alleged to have been the fact, and it is so stated as one of the reasons for a new trial; but *non constat* that the court may not have overruled the motion for the very reason that the fact was not as alleged. The petition on which one of these proceedings is based was in these words: " J. G., agent for said company, comes and gives notice to the judge of this court that said company *wish to run their road through* the N.W. ¼ of section 35, &c., of which said defendant is the owner," &c., and prays " the appointment of viewers to examine and view said land and assess the damages thereof, and thereupon," &c. In the case

of Samuel Morton, the petition is, "that the company *wish to run the road through* the land of said defendant and to occupy a strip," &c., &c.; and, as the parties could not agree on the damages, the prayer is, that viewers be appointed "to examine and view said land and assess the damages *done thereto* by reason of the location and construction of said road;" and so the proceedings go on, indiscriminately using words in the past and future tense, from some of which language it might be inferred that the road was already built, and from other portions in the same proceeding that it was yet to be constructed. Whether the road had been constructed before the proceedings in these cases commenced, or had not, was a fact, which, if it had been thought of any importance, would easily have been proved, and could readily have been made to appear on the record. But it is plain that the fact, however it was in reality, was deemed of no importance, for the only alleged ground for setting aside the first assessment was the insufficiency of the compensation allowed; and it was not until the second review was ordered and made, and a motion was made (as appears in the bills of exceptions) for a third appointment of viewers, that this subject was even alluded to, and then there is nothing to show how the fact was.

It is quite manifest from the whole record in these cases that the substantial and real grounds of objections were in both cases the supposed inadequacy of the damages allowed by the commissioners appointed by the court. Whether this was so or not, or upon what grounds the viewers acted, we have no means of knowing, and, if we had, could furnish no redress. Two sets of viewers, intelligent and impartial citizens, no doubt, of the county, and fully acquainted with all the facts which deserved consideration in forming a judgment, have passed upon the question of damages, and there is no power in this court to correct any erroneous opinion they may have entertained or acted on, if such error has in truth existed.

There is therefore no ground appearing upon the record

returned under the writ to warrant this court in quashing the proceedings; consequently the writ of *certiorari* must be dismissed. Judgment accordingly; Richardson, Judge, not sitting, having been of counsel.