THE STATE *ex rel.* WALBRIDGE, *Mayor*, v. VALLIANT, *Judge*.

In Banc, June 25, 1894.

Certiorari: INTERLOCUTORY ORDER.   *Certiorari* will not lie, to review an interlocutory order of the circuit court, made in a proceeding in which it has jurisdiction, before its final determination. And in such circumstances the writ will be quashed on motion, although no return has been made thereto.

*Certiorari.*

WRIT QUASHED.

*W. C. Marshall* for relator.

(1) The writ of *certiorari* was properly issued in this case.   It is a writ issuing from the supreme court to an inferior court, or officer exercising judicial powers, whose proceedings are summary, commanding the latter to return the records of a cause depending before it to the superior court.   3 Am. and Eng. Encyclopedia of Law, p. 60.   It usually issues in cases only where the proceedings of the inferior court are summary and not according to the course of the common law. Tidd's Pr., 379; *Farmington River, etc., v. County*

*Commissioners*, 112 Mass. 206; *Lynch v. Crosby*, 134 Mass. 290. (2) A writ of *certiorari* may be issued either before or after the inferior court has entered judgment. It was issued before judgment in the following cases. *State v. Hunt*, 46 N. J. L. 59; *Rector v. Price*, 1 Mo. 198; *Railroad v. Morton*, 27 Mo. 198; *Owens v. Co. Court*, 49 Mo. 294; Harris on Certiorari, secs. 1, 2, 3, 4, 10, 16. (3) At common law there were two writs known as writs of *certiorari*. The first taking up proceedings at any stage of the case prior to final judgment; in other words, for trial in the superior court; the second for taking up the record after final judgment in the lower court, which was a writ in the nature of a writ of review and only issued in cases where no appeal or writ of error lies. Harris on Certiorari, section 3, page 5; sections 2, 3, 4, 10; *Laurence v. Dickey*, 12 N. J. L. 368; *Mackaboy v. Com.*, 2 Va. Cases, 268; *Railroad v. Morton*, 27 Mo. 317; *State v. Foster*, 41 Mo. 61. It issues under supervisory power over inferior courts at any time. *Edgar v. Greer*, 14 Iowa, 212; *Lawton v. Com.*, 2 Caines, 182; *Rex v. Glamorganshire*, 1 Ld. Raym. 580. (4) *Certiorari* has been awarded as an original writ and the cause heard and considered by this court in the following cases: *Rector v. Price*, 1 Mo. 198; *Railroad v. Morton*, 27 Mo. 317; *State v. Foster*, 41 Mo. 61; *Owens v. County Court*, 49 Mo. 372; *Railroad v. Board*, 64 Mo. 294; and these cases have been cited approvingly in *State ex rel. v. Holladay*, 67 Mo. 70; *State ex rel. v. Kansas City*, 89 Mo. 38. (5) Under the provision of the constitution, above quoted (section 3, art. 6), and under section 3243, Revised Statutes, 1889, which gives all courts power to issue all writs which may be necessary in the exercise of their respective jurisdiction, according to the principles and usages of law, this court has, from time to time, issued original writs in extra-

ordinary cases. *Ex parte Marmaduke* 91 Mo. 228; *State ex rel. v. Rombauer,* 104 Mo. 619; *State ex rel. v. Rombauer,* 105 Mo. 103. And in *mandamus* cases and cases in the nature of *mandamus,* too frequently to need reference. (6) An appeal leaves the judgment in full force and effect, without any interference or interruption by reason of the appeal. 1· Freeman on Executions [2 Ed.], sec. 32; *Railroad v. Atkinson,* 17 Mo. App. 484; *Hogan v. Rose,* 52 U. S. (11 How.) 294–297; *Railroad v. Harris,* 74 U. S. (7 Wall.) 574; *Sage v. Railroad,* 93 U. S. (3 Otto) 412; *Williams v. Bruffy,* 102 U. S. (12 Otto) 248. (7) An appeal with a bond operates as a *supersedeas* in no case except those specified in section 2249, Revised Statutes of Missouri. *State ex rel. v. Lewis,* 76 Mo. 370; *Railroad v. Evans & Howard,* 85 Mo. 307; *State ex rel. v. Ransom,* 86 Mo. 326; *Teasdale v. Jones,* 40 Mo. App. 243; *Neiser v. Thomas,* 46 Mo. App. 47; Elliott on Appellate Procedure, secs. 362–374. (8) A writ of *certiorari* issued after judgment does not supersede the judgment nor stay the same. *Johnson v. The State,* 1 Ala. 97; *Burshaw v. City Council,* 39 N. J. Law, 416; ˙*McQuaid v. Emmons,* 38 N. J. Law, 397; *Mayor v. Shaw,* 14 Ga. 162; *Taylor v. Gay,* 28 Ga. 80; *Patchin v. Mayor,* 13 Wend. 664; *Board v. Wonderly,* 55 Ga. 570; *Ewing v. Thompson,* 43 Pa. St. 372; *State v. Niel,* 1 Charlt. (Ga.) 42; *Shaw v. Macon,* 19 Ga. 468; *Commissioners v. People,* 99 Ill. 587; *People v. Hill,* 65 Barb. 170. (9) This court can only review such matters as are matters of record in the case before the mayor. It can not, and will not, undertake to look into or decide questions of fact, nor to reverse the action of the mayor, even though the court, upon those facts, would have reached a different conclusion. The evidence which was returned to the circuit court in obedience to the writ issued by that court is no part of the record and was never made

part of the record by a bill of exceptions. *State ex rel.
v. Hockaday*, 64 Mo. 294; *State v. Foster*, 41 Mo. 61;
*State ex rel. v. Holladay*, 67 Mo. 70; *State ex rel. v.
Kansas City*, 89 Mo. 38; *State v. Johnson*, 18 Lawyer's
Reports Ann. 410; *Ex parte Childs*, 12 Pick. 358;
*Richardson v. Smitt*, 59 N. H. 517; *Mollett v. Keenan*,
22 Ala. 484; *People v. Betts*, 55 N. Y. 600; *State v.
Doherty*, 25 La. Ann. 119. (10) It is proper to
inquire whether there was any evidence to establish
some essential fact, but the finding can not be disturbed
if supported by any competent evidence. The supreme
court is "not to determine whether the probabilities
preponderate one way or the other, but simply to
determine whether the evidence is such that it will jus-
tify the finding as a legitimate inference from the facts
proved, whether that inference would or would not
have been drawn by the superior tribunal." *Jackson
v. People*, 10 Mich. 111; *Ex parte Madison Turnpike
Co.* 62 Ala. 93; *Camden v. Clock*, 65 Ala. 236; *Ransom
v. McElvaine*, 49 Mich. 194; *Hyde v. Nelson*, 11 Mich.
357; *People v. Board*, 72 N. Y. 415; *People v. Board*, 69
N. Y. 408; *People v. Weigant*, 14 Hun (N. Y.), 546;
*Moreland v. Whitford*, 54 Wis. 150; *Fore v. Fore*, 44
Ala. 478; *Miller v. McCullough*, 21 Ark. 426; *Deputy
v. Betts*, 4 Har. (Del.) 352; *Burton v. Ferguson*, 69 Ind.
486; *Mendon v. Commissioners*, 5 Allen, 13.

*Leverett Bell* for respondent, Reid.

(1) The motion to quash the writ of *certiorari*
should be sustained. This court will not hear indi-
rectly by resort to *certiorari* a case which by the state
constitution it has not jurisdiction of by writ of error
or appeal. *Britton v. Steber*, 62 Mo. 370. The rule as
to *certiorari* is not modified by *State v. Tracy*, 94 Mo.
217. (2) If this court possessed jurisdiction of the

controversy in the Reid case, the practice act provides for the removal of the same from the circuit to the supreme court by writ of error or appeal, and in such case *certiorari* does not lie.   The writ of *certiorari* will issue where no adequate mode of review is provided by writ of error, appeal or otherwise from the decisions of inferior courts or tribunals.   Harris' Certiorari, sec. 1; *Ennis v. Ennis*, 110 Ill. 78.   (3) If the court, upon a hearing, is satisfied that the writ was improvidently issued, or that justice and equity so require, it will dismiss the same.   *Curtis v. Utica*, 45 How. Pr. 289; *People v. Mayor*, 2 Hill (N. Y.) 9; *Gager v. Board*, 47 Mich. 167.   (4) It is now the universal practice to refuse the writ of *certiorari* while the proceedings below are still pending and undetermined.   2 Spelling Extr. Relief, sec. 1894; *People v. Peabody*, 26 Barb. (N. Y.) 437.   It does not go to inferior courts, etc., until the proceedings before them are completed, and a final determination or adjudication had.   2 Spelling Extr. Relief, sec. 1894; *Cuyler v. Trustees*, 5 Thomp. & C. (N. Y.) 609.   (5) It does not appear that the relator in this writ has any personal interest in the subject-matter of the original case.   The party applying must show that he has a personal interest in the subject-matter, and not a mere public interest, etc.   Harris' Certiorari, sec. 2; *Colden v. Botts*, 12 Wend. 234.

*W. B. Thompson* also for respondent, Reid.

This court has recently decided, in the case of the *State ex rel. Reid v. Walbridge*, 119 Mo. 383, that the mayor has full authority to hear and determine the charges made against Reid, and this court has also held in that case that the courts of law will review any decision made by the mayor in this case.   The courts of law have power to review, and the decision *supra* is in

harmony with all the authorities; it affirms the case of the *State ex rel. v. St. Louis,* 90 Mo. 19, and the doctrine of which case is sustained by the following authorities: *People v. Board,* 72 N. Y. 415; *People v. Board,* 72 N. Y. 445; *Stockwell v. Board,* 22 Mich. 341; *Kennard v. Lousiana,* 92 U. S. 480. The following cases have held that a writ of *certiorari* will not issue for a mere defect of form: *Elmendorf v. Mayor,* 25 Wendell, 693; *Monterey v. Berkshire,* 7 Cushing (Mass.), 394; *Smith v. Commissioners,* 42 Me. 395; *Criswell v. Richter,* 12 Tex. 18. The courts will not issue a *certiorari* where substantial justice has been already done, or where mischievious consequences will result from its issue, or where the parties can not be placed *in statu quo* by its issue. *Hancock v. Boston,* 1 Metcalf (Mass.) 122; *Rutlandt v. Worcester,* 20 Pickering (Mass.), 71; *Gleason v. Sloper,* 24 Pickering, 181; *People v. Supervisors,* 15 Wendell, 198; *People v. Rochester,* 21 Barber, 656.

MACFARLANE, J.—A writ of *certiorari* was issued from this court to respondent, as judge of the circuit court of the city of St. Louis, requiring him to send up the records and proceedings in the case of *State ex rel. Reid v. Walbridge* then pending before him. In obedience to said writ the records have been filed in this court.

It appears from the records that charges had been preferred before Walbridge, as mayor, against George B. Reid, as commissioner of public buildings of the city of St. Louis, which had been heard and determined by him on the thirty-first day of January, 1894. That proceeding resulted in an order removing the said Reid from office.

On the first day of February, 1894, upon the application of the said Reid a writ of *certiorari* was issued by

the circuit court of the city of St. Louis directed to the said Walbridge, as mayor, upon which the records and proceedings of the mayor in said matter was brought before said court for review. Upon granting the writ the circuit court made the further order that "no further steps or proceedings shall be had, in the matter of the removal of said Ried from said office, or the appointment or election of a successor thereto, until the judgment of this court is had in the premises."

To the writ the mayor made return and on the twelfth day of February, 1894, the relator Reid filed a motion, in said circuit court to quash the proceedings had before the mayor.

Pending the motion, this writ was issued by two of the judges of this court in vacation on the twentieth day of February, 1894.

A motion was filed to quash and dismiss the writ, on the ground, among others, that the cause was still pending and undetermined in said circuit court, and no final judgment had been rendered therein. This motion, and the case on its merits, were argued orally together, and briefs have also been furnished on both. The view we take of the law renders it necessary to consider only the motion.

It is said by relator, that the order of the circuit court, in the nature of a *supersedeas*, was beyond its power and jurisdiction, and, though merely interlocutory in its character, afforded sufficient authority for the issuance of the writ; that the writ can properly issue at any stage of the proceedings, if necessary, in order to keep the court within its jurisdiction. On the other hand respondent argues that the writ only operates as a means of securing a review of the proceedings of an inferior court or tribunal and can only issue after a final determination of the case.

According to the ancient common law, a writ of *certiorari* issued out of chancery or the King's Bench, to the judges of inferior courts, commanding them to return the records of a cause depending before them, to the end that the party might have the more sure and speedy justice before the court issuing the writ, or before such court as might be assigned to determine the cause. Bacon's Abridg., title, Certiorari.

The writ was thus issued, not only for the purpose of reviewing the proceedings of the lower court, as a writ of review after final judgment, but as a means for removing the entire cause for hearing and determination in another court. But it is said by Judge NAPTON in *Railroad v. Morton*, 27 Mo. 320: "A reference to the English commentators and judicial decisions will readily show that the writ is much more extensively used in that country than it could be here, and under such circumstances which would totally exclude any resort to such a proceeding in this state."

The writ, at common law, was not one of right, but was allowed or refused in the discretion of the judge or chancellor. Harris on Certiorari, sec. 4.

Unless the use of the writ is regulated by statute, which is the case in some of the states when directed to an inferior court or tribunal, it is only used as a writ of review. In such case its use is that of a remedy and not of an action. The application is still addressed to the sound discretion of the judge authorized to issue the writ. It does not issue as a matter of right, unless under some mandatory statute. The courts of each jurisdiction can, and do, adopt their own rules of practice in respect to such discretionary matters, and are not bound by the rules of the common law or courts of other states.

While, according to the ancient common law, now much modified by statute in England, the writ

appears sometimes to have issued at any stage of the proceedings, for the purpose of removing the entire cause from one court to another for trial, and to keep the inferior court within its jurisdiction, such has never been the practice in this state. Unless the statute provides, as in case of unlawful detainer (sec. 5126), or unless, as ancillary to an appeal or writ of error upon a suggestion of a diminution of the record, the writ is only used as one of review, and only in case no appeal or writ of error or other plain and adequate remedy is provided.

It has been the uniform practice in this state, and generally in other states of the Union, in the absence of statutory regulation, only to issue the writ for the purpose of reviewing the final determination and adjudications of inferior courts and other tribunals when acting judicially. Harris on Certiorari, sec. 194; 2 Spelling's Extraordinary Relief, sec. 1894; *State ex rel. v. Edwards*, 104 Mo. 125.

Whatever may be the power of the superior court, according to the rules of the common law, to keep its hand upon those over which it has supervisory control, and guide them in each of their rulings in the progress of the cause, this court has ever refused, by writs of *mandamus*, prohibition or *certiorari* to exercise it; but, when the court or tribunal has jurisdiction to proceed correctly, the right to commit errors, and the opportunity to make corrections themselves has never been denied. *State ex rel. v. Court of Appeals*, 99 Mo. 221; *State ex rel. v. Burckhartt*, 87 Mo. 533; *State ex rel. v. Scott*, 104 Mo. 419; *State ex rel. v. Withrow*, 108 Mo. 1; *State ex rel. v. Edwards, supra.*

The circuit courts of the state are, under the constitution and laws of the state, possessed of original common law jurisdiction, and have inherent authority, in all proper cases, to issue the writ of *certiorari*. This

authority has ever been recognized, and, so far as we find, has never been questioned. *State ex rel. v. Dowling*, 50 Mo. 134; *State ex rel. v. City of Kansas*, 89 Mo. 37; *Owens v. Andrew Co.*, 49 Mo. 375; *State ex rel. v. Walbridge*, 116 Mo. 656.

The circuit court having jurisdiction to hear and determine the matter before it, this court will not undertake to direct what rulings it shall make or what judgment it shall render.

We think the writ prematurely issued and order the same quashed and the records returned to said circuit court for the hearing and disposition of the cause. BLACK, C. J., and BRACE, GANTT and BURGESS, JJ., concur; BARCLAY and SHERWOOD, JJ., dissent.

BARCLAY, J. *(dissenting)*.—The writ of *certiorari* is available in this court, in my opinion, to quash action by a trial court in excess of the jurisdiction of the latter, where the remedy by appeal or error is wholly inadequate (as to an order during the pendency of a cause).

In this case, the order in the nature of a *supersedeas*, in the circuit court, had the effect to put Mr. Reid again into the office, notwithstanding the judgment of removal by the mayor and the notice thereof to Mr. Reid. That order of *supersedeas* can not be gotten rid of during the proceedings in the circuit court, for the latter has refused to vacate it on motion.

If the order is in excess of the power of that court, in the case there, the order should be quashed.

Whether or not the circuit court, in such circumstances, had authority or jurisdiction to supersede the mayor's judgment, or rather to reverse it, by reinstating Mr. Reed in office, pending the proceedings (and, perchance, during the subsequent appeal), is a question

properly arising on the record brought before us by the writ of *certiorari* issued from this court.

In my view, that question should be considered and determined on its merits; and hence this respectful dissent to the summary dismissal of the writ here, on motion.

SHERWOOD, J. *(dissenting).*—Unable to concur in the majority opinion, I will give a *resume* of the pertinent facts relating to the rise, progress and ultimate demise of this case, and then set forth some reasons which occur to me why the action of the majority in quashing the writ of *certiorari* should be held unwarranted on the facts and on the law.

At the outset it may be remarked that no return has been made to the writ herein. This case had its origin in charges preferred by Robert E. McMath, president of the board of public improvements, against George B. Reid, commissioner of public buildings, which charges showed upon their face that Reid had been guilty of certain flagrant derelictions from official duty. Of these charges, Walbridge, the mayor, had duly notified Reid on August 14, 1893, and was about to proceed to try him in a summary way, as pointed out by, and provided for in, the charter of the city, and would have done so, but for the interposition of original proceedings on behalf of Reid, instituted in division number two of this court, in which a rule was granted on the mayor to show cause why a writ of prohibition should not issue to prevent him from trying Reid on the charges preferred. Upon the hearing we held that the mayor was in the right, and within the bounds of his duty, in proceeding to try Reid. See *State ex rel. v. Walbridge*, 119 Mo. 383. And in thus holding we did but follow the earlier case of *Manker v. Faulhaber*, 94 Mo. 430, which upheld the power of the

mayor summarily to try and to remove an unworthy official.

Thereupon Reid moved for a rehearing, and to transfer the cause to the court *in banc*, whereby the final determination of the cause was delayed until the next term thereafter, when the motions were denied. After a delay of some five months from the time Reid was notified, produced by prohibitory proceedings instituted by Reid, the mayor was allowed to proceed to bring the delinquent official to trial, which resulted in the conviction of Reid on ample evidence of most flagrant official delinquencies, as specified in the charge preferred by McMath. Indeed, the answer of Reed to those charges substantially admits their truth, and then undertakes to justify his action on the ground that, though he violated plainly worded ordinances of the city, yet that *he had the right* to do so in the exercise of *"his discretion as an architect."* Not only does the answer of Reid make these virtual admissions of his guilt, but the evidence shows in the clearest possible light that in defiance of the plainest prohibitions of the city charter and ordinances, he altered contracts made with the city and substituted clauses and specifications of his own therefor, and, after doing this, he certified that the work contracted for, and which had not been done, had been done, and drew a voucher for the whole contract price. The trial of Reid on the charges preferred ended on January 31, 1894, and resulted, of course, in a richly deserved judgment of removal, and the mayor thereupon issued his notice of the order of removal to Reid, which was served on the same day, and then complying with section 7 of article 4 of the city charter, the mayor, on the same day, notified the city council that he had removed Reid, stating the causes therefor. Under the section mentioned it was the duty of the council, upon being thus notified,

to fill the vacancy created by the order of removal. This was all that section 7 aforesaid required.

On the second day of February, 1894, the circuit court issued its writ of *certiorari* to the mayor, and entered an interlocutory order or judgment prohibiting the mayor from taking any further steps in the matter of the removal of Reid until the judgment of the court should be had in the premises, and required the relator Reid, in that proceeding, *"to give bond"* "conditioned according to the provisions of section 2249, Revised Statutes, 1889, *in relation to bonds in case of appeals."* Bond was accordingly given, approved and filed. The section in question relates *solely* to bonds being given when appeals are taken from a *final* judgment of a *circuit court* to some appellate court; it has no other application or meaning.

Two writs of *certiorari* were known at common law. The former took up the record or proceedings at any stage of the case to the court from whence the writ issued, the latter after final judgment, and was therefore in the nature of a writ of review. We have in this state no statutory regulation of such writs, save in the case of forcible entry and detainer, and of consequence we are left to the rules of the common law as to the manner of the issuance of the writ and all of its incidents and consequences. "It was a distinguishing feature of this remedy at common law [*certiorari*] that it was the appropriate writ for the removal of a cause before judgment, while the writ of error removed it afterwards." 2 Spelling's Extr. Relief, secs. 1894, 1914, 1917. "A *certiorari* lies, in general, for the removal of all causes from inferior courts, whether the defendant has been proceeded against therein by *capias* or other process, and it will lie to remove an ejectment from an inferior court. This writ may be sued out *before*, or, in some cases, *after*, judgment; and lies in civil actions

*before* judgment, in the King's Bench or Common
Pleas, in all cases where these courts have jurisdiction,
and can administer the same justice to the parties as
the court below; and though the cause can not be
determined in the court above, yet this writ may be
granted, if the inferior court have no jurisdiction over
it, or do not proceed therein according to the rules of
the common law." 1 Tidd's Pr. [4 Am. Ed.], 398;
*Goodright v. Dring*, 2 Dowl. & R. 407; *Cross v. Smith*,
2 Ld. Raym. 836; Comyns's Dig. [4 Ed.], title,
"Certiorari."

In *Hannibal & St. J. R'y Co. v. State Board*, 64 Mo.
*loc. cit.* 308, it is said: "We have no statute in this
state regulating the practice in proceedings by *certiorari*,
and are to look to the common law for a guide in such
cases." To the same effect see *In re Saline County Sub-
scription*, 45 Mo. *loc. cit.* 53. Adopting this undoubt-
edly correct view that the common law rule must
prevail where none is provided by statute, the right of
relator to sue out the present writ *before* any final action
of the circuit court, can not be doubted. This was the
course pursued in *Rector v. Price*, 1 Mo. 198, one of
our earliest reported cases, where *certiorari* was
employed as a remedial process, when the language of
our constitution was the same on the subject of extra-
ordinary writs as it is now, to wit: "The supreme court
shall have a general superintending control over all
inferior courts of law. It shall have power to issue writs
of *habeas corpus, mandamus, quo warranto, certiorari* and
other remedial writs, and to hear and determine the
same." Art. 5, sec. 3. And in that case reference
was made to this organic provision, and reliance had
on it. Numerous instances are to be found in our
reports where this "superintending control" has been
exercised by this court in conformity to its specifically
prescribed constitutional duty. Some of these instances,

in addition to the one just cited, will now be given, where this court has exercised its original jurisdiction.

Thus, in *certiorari: Railroad v. Morton*, 27 Mo. 317, issued to review the finding of commissioners in a railroad condemnation case. *Owens v. County Court*, 49 Mo. 375, issued to review the finding of the county court in the matter of the settlement of the collector for Andrew county. *Hannibal & St. J. R'y Co. v. State Board*, 64 Mo. 294, issued to review the action of the state board of equalization in assessing the property of the railroad company. *In re Saline Co. Subscription*, 45 Mo. 52, issued to determine the validity of a subscription by the Saline county court for stock in the Louisiana & Missouri River Railroad Company. *Phelps Co. v. Bishop*, 46 Mo. 68, issued to determine the validity of a judgment rendered by the county court in favor of Bishop. *Railroad v. Young*, 96 Mo. 39, *certiorari*, to remove proceedings from a county court in regard to opening a road. See, also, the recent case of *State ex rel. v. Slover*, 113 Mo. 202, where this court, by its writ of *certiorari*, reviewed the action of the circuit court *in removing a stenographer*.

Thus in prohibition: Where the circuit court attempted to exercise judicial authority over which it had no jurisdiction, this court restrained it by a writ of prohibition. *Vitt v. Owens*, 42 Mo. 512. The writ of prohibition is issued to inferior courts to prevent the wrongful assumption or excess of jurisdiction. This was done by this court in *State ex rel. v. County Court*, 41 Mo. 44. *State ex rel. v. Smith*, 104 Mo. 419; *State ex rel. v. Rombauer*, 104 Mo. 619; *State ex rel. v. Rombauer*, 105 Mo. 103; *State ex rel. v. Withrow*, 108 Mo. 1; *State ex rel. v. Field*, 112 Mo. 554. Prohibition will lie to prevent a judge from granting a new trial after the expiration of the term, since such act is not merely erroneous, but is void for want of jurisdiction. *State*

*ex rel. v. Walls,* 113 Mo. 42.   *State ex rel. v. Dillon,* 96 Mo. 56, to determine the power of a circuit court to punish for contempt of an injunction, after the injunction case had been appealed from that court.

Thus in *mandamus:*   *State ex rel. v. Rodman,* 43 Mo. 256, to compel the secretary of state to cast up the result of an election for judge of the circuit court. *State ex rel. v. Saline County Court,* 45 Mo. 242, to compel the court to issue bonds and levy a tax for their payment.   *State to use v. County Court,* 48 Mo. 390, to compel the county court to levy a tax to pay bonds. *State ex rel. v. County Court,* 41 Mo. 221, to compel the county court to approve the bond of the sheriff as collector.   *Dunklin Co. v. District County Court,* 23 Mo. 449, to compel the county court to vacate an order selling swamp lands to a railroad company in payment of a stock subscription.   *Franciscus v. Martin,* 9 Mo. 196, motion and rule to set aside a judgment.   The lower court discharged the rule for want of jurisdiction.   *Held,* "We are rather inclined to the opinion that this is a proper case for a *mandamus."*   *Vernon v. Boggs,* 1 Mo. 117, 274, to compel the court to enter a judgment upon a confession of judgment.   *Castello v. Circuit Court,* 28 Mo. 259, to compel the court to reinstate and determine a contested election case in which the court had quashed the proceedings on the ground that the statutory notice of contest had not been given.   *Ex parte Cox,* 10 Mo. 743, *mandamus* to compel the circuit court to set aside an order granting a change of venue, and to proceed and determine the cause.   *Beck v. Jackson,* 43 Mo. 117, to compel a circuit judge to approve the bond of a person appointed circuit clerk by the governor.   *State ex rel. v. Treasurer of Callaway County,* 43 Mo. 228, to compel the treasurer to pay an audited account in favor of the board of registration of the county.   *State ex rel. v. Adams,* 76 Mo. 605, to compel

a circuit judge to enter up a judgment on a second verdict. The circuit judge of his own motion had set aside the second verdict. *State ex rel. v. Court of Common Pleas*, 73 Mo. 560, to compel a trial court to act upon a motion for judgment, when the court had ordered the case to be dropped from the docket.'' *State ex rel. v. Lewis*, 71 Mo. 170, to compel the court of appeals to approve an appeal bond, and to order a *supersedeas*, when that court had held that it had no jurisdiction so to do. *State ex rel. v. Berg*, 76 Mo. 136, to compel a board of canvassers of election return to count certain votes which the board had rejected. The *mandamus* issued after the board had finally adjourned. *State ex rel. v. Philips*, 96 Mo. 570, to compel the court of appeals to certify and transfer a case to the supreme court. *State ex rel. v. Tracy*, 94 Mo. 217, to compel the city register to receive a statement, and extend in the "merchant's tax book" a tax levied for school purposes. *State ex rel. v. McGrath*, 92 Mo. 355, to compel the secretary of state to issue a certificate of incorporation. *State ex. rel. v. Philips*, 97 Mo. 340, to compel the court of appeals to reinstate a cause which it had improperly dismissed. *State ex rel. v. Weeks*, 93 Mo. 499, to compel a county court to grant a dramshop keeper's license. *State ex rel. v. Williams*, 99 Mo. 291, to compel the recorder of voters of St. Louis to issue a certificate of election as marshal of said city. *State ex rel. v. Baggot*, 96 Mo. 63, to compel the coal oil inspector of St. Louis to inspect oil in bulk in large tanks. *State ex rel. v. State Board of Health*, 103 Mo. 22, to compel the state board of health to issue a certificate to practice medicine. *State ex rel. v. Smith*, 104 Mo. 661, to compel a county clerk to issue a certificate of election. *State ex rel. v. Smith*, 105 Mo. 6, to compel the lower court to reinstate a cause and hear and determine it. *State ex rel v. Field*, 107 Mo. 445, to

compel the lower court to proceed with a cause. *State ex rel. v. Neville*, 110 Mo. 345, so compel the lower court to appoint commissioners in a condemnation case. *State ex rel. v. Stratton*, 110 Mo. 426, to compel the circuit court to hear and determine a motion for a new trial. *Tobacco Co. v. Rombauer*, 113 Mo. 435, to compel the court of appeals to certify the case to the supreme court because "of the amount in dispute." *State ex rel. v. Railroad*, 114 Mo. 283, to compel the railroad company to rebuild a line of railway, and to run trains thereon. *State ex rel. v. Bronson*, 115 Mo. 271, to compel respondent to use books adopted by the Missouri school book commission in the schools of the city of Sedalia school district.

The recent case of *State ex rel. v. Slover*, 113 Mo. 211, was a *mandamus* proceeding, asking that the circuit judge be compelled to certify relator's account for services as official stenographer. And in the still more recent case of *State ex rel. v. Johnson*, 123 Mo. 43, a peremptory *mandamus* was awarded to compel the city comptroller to pay the increased salary of the chief engineer of the city's fire department.

These cases abundantly show that this court has jurisdiction, and that it has not hesitated to exercise it in cases like the present. The case of *Britton v. Steber*, 62 Mo. 370, a *certiorari* proceeding relied on by respondent, announces a different doctrine as to jurisdiction, to the effect that *certiorari* will not lie where appeal or writ of error will not, which is *just the reverse* of what all other adjudications and the text books announce, to wit, that as a general rule *certiorari* issues *only* where appeal or writ of error will not. *Britton's Case* has not been followed. It has been virtually overruled by *Tracy's Case* and *Philips' Case*, *supra*, and indeed by every case since its adjudication, where original juris-

diction has been exercised by this court where appeal or writ of error would *not lie.*

The next point for determination is, what was the force and effect of the interlocutory order or judgment entered by respondent. It is claimed for it that it operated as a *supersedeas.* This, however, is a mistake. The rule, as I understand the authorities to announce it, is this: Where the judgment rendered has *"been begun to be executed,"* a *certiorari* subsequently issued will not operate to stay the judgment or its enforcement. *Patchin v. Mayor, etc.,* 13 Wend. 664; *Blanchard v. Myers,* 9 Johns. 66; *Commissioners of Highways v. People ex rel.,* 99 Ill. 587; 1 Salk. 147; 2 Hawk. P. C., chap. 27, sec. 63. In this case, as before stated, the judgment of removal had been entered and served on Reid on the thirty-first day of January, 1893, and on the same day the mayor had notified the city council of Reid's removal, as required by section 7 of article 4 of the city charter, stating the cause of such removal. Therefore there was nothing more for the mayor to do, or that he could do. The judgment was *self-enforcing,* and had been completely and fully executed, so that there was nothing left on which the *certiorari* issued on the second day of February, 1893, could operate as a *supersedeas.* Nothing remained therefore, for the council to do but to fill the vacancy created by the judgment of removal. *Hyde v. State ex rel.,* 52 Miss. 665; Throop on Public Officers, section 327; Mechem's Public Offices and Officers section 460. And the removal of Reid having been accomplished by the judgment of the mayor, it was wholly beyond the power of the circuit court by its judgment to reinstate Reid in office. *Mayor, etc., v. Shaw,* 14 Ga. 162, and cases; *State ex rel. v. Meeker,* 19 Neb. 444. If these views are correct, then the circuit court clearly acted in excess of its jurisdiction in adjudging that the

*certiorari* suspended the judgment of removal, and in adjudging that the judgment of removal was not accomplished and effectuated before the issuance of the *certiorari*, issuing two days after the rendition of the judgment. For this excess of jurisdiction it is clear that *certiorari* would lie. 2 Spell. Extr. Relief, sections 1890, 1930.

But it is said that this court has a *discretion* in issuing a writ of *certiorari*. This is true, but it seems that this discretion ends after the writ has been *"duly and legally issued."* 2 Spell. Extr. Relief, section 1907. But, granting that the issuance of the writ is discretionary, what is the nature of that discretion? Touching this point, it is elsewhere said: "Writs of *certiorari*, it has been held, are grantable only at the discretion of the court, and are not allowed *'exdebito justitiæ.'* Discretion, however, when exercised by a court, does not mean precisely what the word in common parlance may seem to import. A legal discretion is implied; a discretion to be exercised according to the rules of law. If the rights of a party have been infringed to his detriment, by the erroneous doings of an inferior tribunal, he may justly claim redress; and it will be the duty of a court to afford it to him." *Inhabitants of Cushing v. Gay,* 23 Me. 9.

In other words, the same rule prevails on applications for *certiorari* as does in petitions for specific performance, concerning which a similar view is taken and similar language used. "By this is meant, not the exercise of an arbitrary and capricious will governed by the mere pleasure of the court. * * * When a contract concerning real estate is valid, unobjectionable in its nature and in the circumstances connected with it, and capable of being enforced, and it is just and proper that it should be fulfilled, it is as much a matter of course for a court of equity to decree a specific per-

formance as for a court of law to give damages for the breach of it." Waterman on Specific Performance of Contracts, section 6.

But it is urged that, as the right of appeal exists from any judgment which the circuit court might render, this amounts to a bar to relief through the medium of *certiorari*. Generally this is true, but not always. "This rule is subject to the qualification that such other means of redress, in order to constitute a bar, should be adequate to meet the necessities of the case. Thus the right of appeal, while it is generally held an adequate means of redressing mere errors committed in the exercise of jurisdiction, may be inadequate to redress or prevent a wrong committed in the absence or excess of jurisdiction." 2 Spell. Extr. Relief, secs. 1918, 1963; *Railroad v. Brannum*, 11 S. Rep. (Ala.) 468; *Vaughn v. City*, 37 N. W. Rep. (Wis.) 809; *King v. Inhabitants*, 4 Maule & S. 378.

In this instance the remedy by appeal would be grossly inadequate, seeing that the *summary* proceedings instituted by the mayor were instituted for the express purpose of a *speedy* trial and removal of Reid, if found guilty of the charges preferred, which proceedings were held valid by us, and that the mayor was proceeding within the strict bounds of his legitimate authority. *State ex rel. v. Walbridge*, 24 S. W. Rep. (Mo.) 457. Those proceedings, as before stated, were begun on the fourteenth of August, 1893. They were arrested, however, by a writ of prohibition of this court, and thus suspended until January 8, 1894, when the writ of prohibition was finally denied, and the trial of Reid before the mayor was allowed by us to begin, and terminated on the thirty-first day of that month by the removal of Reid. Now it must be obvious that these proceedings instituted by the mayor *over a year ago*, and which were completed over eight months ago at the present

writing, and are *still pending*, and which are in all re-. spects regular, showing jurisdiction on their face (and supported, too, by ample evidence, for that matter,) are not, and can not be deemed, *summary* if it lies within the power of a removed official *after* his removal to obtain a *supersedeas* of that judgment, and through the law's delays still remain in office. If this be the law, then the sooner the charter of the city of St. Louis authorizing the *summary* removal of unworthy officials be amended the better. As now interpreted, it is simply a delusion and a snare. I regard the precedent set in this case a very dangerous one, and one which in effect overrules *Manker v. Faulhaber*, 94 Mo. 430, and *State ex rel. v. Walbridge, supra,* and nullifies a very wholesome provision of the city charter.

In giving reasons for quashing the writ of *certiorari* herein, allusion has been made to *State ex rel. v. Cooper County Court*, 64 Mo. 170, as showing that in a *mandamus* case, unless of more than usual importance, and owing to the crowded state of our docket, we would not entertain any original proceedings in this court. That case was approvingly cited and followed in *State ex rel. v. Walbridge*, 116 Mo. 656. But the former case, as shown by numerous cases I have cited, has been "more honored in the breach than the observance," and seems to have been entirely *overlooked* in *State ex rel. v. Walbridge*, 24 S. W. Rep. (Mo.) 457, when two of the judges of this court granted prohibitory process to restrain Walbridge from trying to remove Reid. It seems to me that if *that* case, involving the *same facts* as now presented, was of sufficient "*importance*" to warrant the issuance of a writ of *prohibition*, this case ought to be considered of *equal importance*, and warrant the issuance of a writ of *certiorari*, and the hearing and determination of the same. For these reasons I dissent.