THE STATE ex rel. KANSAS AND TEXAS COAL
RAILWAY v. SHELTON, Judge.

### In Banc, March 5, 1900.

1. **Certiorari:** WHEN WRIT WILL LIE. *Certiorari* can not be used as a substitute for an appeal or writ of error. Where the circuit court has jurisdiction of a proceeding and its action can be reviewed on appeal or writ of error, *certiorari* will not lie.

2. ———: CONDEMNATION PROCEEDING. Plaintiff filed its petition in the circuit court, to condemn the right of way of its railroad over defendant's land, and the defendants by their answers to the summons raised the question in that proceeding whether such land were subject to condemnation, and whether the use to which it was sought to condemn the land was a public use. The circuit court, "having heard all the evidence introduced by the plaintiff and defendants," ordered and adjudged that plaintiff was not entitled to "the appointment of commissioners to assess damages," etc., and entered judgment for defendants for costs. Afterwards a writ of *certiorari* on plaintiff's application to one of the judges of this court, was issued, directed to the circuit judge, to certify a transcript of all the proceedings to this court, which was done. The writ is prosecuted, not as auxiliary to an appeal or writ of error, but as an original writ to quash the judgment of the circuit court. *Held,* that, as the circuit court had jurisdiction of the subject-matter, and as the questions raised were judicial questions upon which the court had jurisdiction to pass, and as its judgment was a final judgment from which an appeal or writ of error would lie, the writ of *certiorari* will not lie, and the motion to quash it must be sustained.

*Held,* by MARSHALL, J., dissenting, that an appeal or writ of error will not afford an adequate, efficient and speedy remedy in this case, and as it is discretionary with this court to say whether or not the writ will lie, it should be employed in this case as affording adequate relief.

### *Certiorari.*

WRIT QUASHED.

*Adiel Sherwood* for relator.

(1)   At common law the writ of *certiorari* was used by the superior court for the purpose of reviewing the acts and proceedings of inferior tribunals, courts and officers, whether they proceeded according to the course of the common law or not, and this process of review was used.   First.   Before judgment for the purpose of bringing the record into the superior court for trial.   Goodright v. Dring, 2 Dowl. & Ryl. 407; Cross v. Smith, 1 Salk. 148; Taylor v. Shapland, 3 M. & S. 328; Rex v. Cowle, 2 Burr. 860 (opinion by Lord Mansfield holding "power undoubted"); State ex rel. v. Dobson, 135 Mo. 1.   Second.   To bring the record into the superior court after final judgment, for the purpose of reviewing the regularity of the proceedings of inferior tribunals, courts, or officers, to test the question of jurisdiction and ascertain whether they had kept within due bounds or had usurped a power not given them by law—in short, for the correction of errors and to restrict them within their legal limits.   Groenvelt v. Burwell, 1 Ld. Raym. 469; Rex v. Inhab. of Glamorganshire, 1 Ld. Raym. 580; Cooke v. Reinhart, 1 Rawle (Pa.) 173.   Third. When the record was removed before trial had in the inferior court or tribunal, there was nothing for the superior court to do but to proceed with the trial of the particular case, and as much so as if nothing had ever been done prior to that time. In such a case, therefore, no question could ever arise about the consideration or non-consideration of the evidence before the lower court or tribunal, for the plain reason that no trial had ever been had in the lower court or tribunal, and manifestly there was no evidence to review and none could come up with the record.   Fourth.   Where the writ issued after final judgment below it operated as a writ of error and the record was examined by the superior court in the same manner as if it were being reviewed on writ of error.   Railroad v. Young, 96 Mo. 39; Farmington Co. v. Com'rs, 112 Mass.

212; Groenvelt v. Barwell, 1 Salk. 144; State ex rel. v. Powers, 68 Mo. 320, l. c. 323; Dryden v. Swinburne, 20 W. Va. l. c. 106; Harris v. Barber, 129 U. S. 369. However, when a record was brought into a superior court from an inferior court, board or officer after judgment, the question at once arose as to how far the superior court would consider the acts and proceedings of the inferior court, board or tribunal; in short, whether this review would extend to mere errors of law and would extend to a consideration of the evidence in connection with the record certified. It was held that all errors which appeared upon the face of the record would be reviewed and corrected and that in addition, the lower court, board or officer, would be required to certify to the superior court, so much of the evidence as was necessary to determine whether the lower court, officer or tribunal had proceeded in accordance with its jurisdiction or had acted illegally or whether the proceedings were regular. (2) We often find the announcement made in the books that where no appeal or writ of error lies in proceedings not according to the course of the common law, *certiorari* will lie. First. Where appeal or writ of error does not lie and the lower court, tribunal or officer is not proceeding according to the course of the common law, *certiorari* will lie—otherwise there is no remedy. This is fundamental. Second. The proposition stated in the first subdivision does not mean, however, that *certiorari* does not lie merely because there is a remedy by appeal or by writ of error. The reason is very plain. (a) There was no such thing at common law as an appeal. An appeal is the creature of the civil law, which was introduced into the English system by the lord chancellors and found in this country to day in its purity only in the Federal courts on the equity side. U. S. v. Goodwin, 7 Cranch 111; U. S. v. Wanson, 1 Gall. (U. S.) 11; Styles v. Styler, 64 Conn. 472; Fause v. Vaud, 30 W. Va. 331; Barlow v. Daniels, 25 W. Va. 521; Story's Const. (5 Ed.), sec. 1762.

(b)   An appeal was never allowed unless some statute expressly conferred the right.   2 Chitty Gen'l Prac., 215; Tierney v. Dodge, 9 Minn. 166; King v. Jukes, 8 T. R. 542; King v. Morely, 2 Burr. 1042; Roser v. Marlow R. N. Charlt. (Ga.), 543.   (c)   But *certiorari* was always allowed where the words of the statute did not expressly take it away.   There is not a single authority in any law book, ancient or modern, which ever denied or attempted to deny this plain proposition. People v. Wemple, 61 Hun. (N. Y.) 53; Overseers v. Smith, 2 S. & R. (Pa.) 363; Tierney v. Dodge, 9 Minn. 166; 2 Chitty Gen'l Prac., 219; King v. Jukes, 8 T. R. 542; King v. Morely, 2 Burr. 1042; Railroad v. Suydan, 2 Har. (N. J.) 25.   And king's bench having a general superintending control will remove proceedings by *certiorari* unless some statute or charter forbid.   2 Hawkins P. C., sec. 22, p. 405; Rex v. Morely, 2 Burr. 1040; Ex parte Heath, 3 Hill (N. Y.) 52; This court has all the powers of the court of chancery and king's bench.   State ex rel. v. Rombauer, 105 Mo. 103; State ex rel. v. Rombauer, 101 Mo. 499.   And even where forbidden by statute to correct errors of jurisdiction or excesses and to restrain inferior tribunals within proper limits. People v. Judges of Suffolk, 24 Wend. 249; King v. Judges, 8 Dowl. & Ryl. 733.   The words "general superintending control" and "other remedial writs" in our Constitution have the same meaning as at common law.   Carnall v. Crawford Co., 11 Ark. 615.   Even where *certiorari* and appeal are both forbidden, *certiorari* was issued to correct errors of jurisdiction and keep inferior tribunals within due bounds.   King v. Justices of Somersetshire, 6 Dowl. & Ryl. 471.   The rule is exactly the same in Missouri to day, because the remedy by *certiorari* is provided for in our Constitution and our courts take the remedy as at common law because there has been no legislation upon the subject.   Railroad v. Board, 64 Mo. 294. In this State the right to the remedy is a constitutional right like appeal.   Railroad v. Brick Co., 85 Mo. 307.   Or a writ

of error.    State v. Jim, 1 Mo. 147; Blount v. Sheppard, 1 Mo. 219; Calloway v. State, 1 Mo. 780; Const. Mo., secs. 2, 3, art. VI; Amend. 1884, sec. 5; State ex rel. v. Springer, 134 Mo. 222; Ex parte Anthony, 5 Ark. 358; Specht v. Detroit, 20 Mich. 168; Thompson v. School District, 25 Mich. 483; People v. Judge, 32 Mich. 95; Merric v. Arbela Township, 41 Mich. 631; Swift v. Judge, 64 Mich. 479; In re Booth, 3 Wis. 1; State ex rel. v. Judge, 49 La. Ann. 1454; Vaughan v. Ashland, 37 N. W. Rep. 809; Tierney v. Dodge, 9 Minn. 166.    In like manner it has been held time and again that a remedy in equity is not taken away except by express words. (3)    First.    It is true that the writ of *certiorari* was not a writ of right, except when applied for by the King or under our practice by the State, acting through its Attorney-General.    State ex rel. v. Dobson, 135 Mo. 1.    While the writ of *certiorari* was not a writ of right, it was not refused except in the exercise of the sound judicial discretion of the court.    Supervisors v. Magoon, 109 Ill. 142; Harris v. Barber, 129 U. S. 366.    This has never been held to mean that the superior court would refuse the writ, acting upon mere whim or caprice, or that the superior court would refuse the writ simply because of an accumulation of business or that the granting of the writ would interfere with the conduct of the regular business of the court or because there was a remedy by appeal or writ of error.    The writ is issued to do justice between the parties.    Drowne v. Simpson, 2 Mass. 445; Lees v. Childs, 17 Mass. 352; Bath Bridge Co. v. Magoun, 8 Greenl. (Me.) 293; Comstock v. Parker, 5 Wend. 98; Starr v. Trustees, 6 Wend. 566; Wood v. Randall, 5 Hill. 269; Krumeick v. Krumeick, 2 Green (N. J.) 39; People v. Judges, 24 Wend. 249; Mayor of London v. Coxe, 2 L. R. (H. L.) 278; Stokes v. Knarr, 11 Wis. 393; Knapp v. Heller, 32 Wis. 468; Dunlap v. Ry. Co., 46 Mich. 190; Territory v. Valdez, 1 N. M. 533.    On the contrary, the discretion of the court is a sound judicial discretion to determine whether under the circum-

stances of the particular case, the remedy in the particular case which is open to the petitioner for the writ and on account of which *certiorari* is to be denied, is equally convenient, speedy, and beneficial, and this is what is meant when the courts say that where there is an adequate remedy by appeal or writ of error *certiorari* as a general rule will not lie.    None of the authorities hold that merely because there may be a remedy by appeal or writ of error, that therefore *certiorari* will not lie.    LaGrange v. State Treas., 24 Mich. 477; Inhab. of Cushing v. Gay, 23 Me. 9; Hopkins v. Fogler, 60 Me. 266; Spofford v. Railroad, 66 Me. 26; Edgar v. Greer, 14 Iowa 212: Railroad v. Railroad, 47 Cal. 528; People v. Hill, 53 N. Y. 547; Knapp v. Heller, 32 Wis. 468.    An adequate remedy is a remedy which is equally beneficial, speedy, and sufficient; not merely a remedy which at some time in the future will bring about a reversal of the judgment of the lower court complained of in the *certiorari* proceeding, but a remedy which will promptly relieve the petitioner from the injurious effects of that judgment and the acts of the inferior court or tribunal. People v. Com'rs, 66 How. Pr. (N. Y.) 293; Kirby v. Superior Court, 68 Cal. 605; Havemeyer v. Superior Court, 84 Cal. 398; People v. Head, 25 Ill. 329; People v. Hilliard, 29 Ill. 419; King v. Railroad, 2 B. & Ald. 646; People v. Mayor, 10 Wend. 395; People v. State Ins. Co., 19 Mich. 396; Rex v. Windham, Cowp. 377; Rex v. Barker, 3 Burr. 1265; Rex v. Vice Chancellor, 3 Burr. 1647; LaGrange v. State Treasurer, 24 Mich. 477; North Ala. Dev. Co. v. Orman, 71 Fed. Rep. 764; Railroad v. Brannum, 96 Ala. 461; Highway Comm. v. Harper, 38 Ill. 107; Abney v. Clark, 87 Ia. 727; Coburn v. Mashaska Co., 4 Ia. 242; Callahan v. Lewis, 79 Ia. 452; State v. Evans, 13 Mont. 239; Paul v. Armstrong, 1 Nev. 82; Wiggins v. Henderson, 36 Pac. Rep. 59; State v. Stedman, 57 Hun. (N. Y.) 282; Union Steamboat Co. v. Buffalo, 82 N. Y. 351; State v. Rose, 58 N. W. Rep. 519; Golding v. Jennings, 1 Utah 135; Ducheneau v. House, 4

Utah 367; State ex rel. v. Elkin, 130 Mo. 90; State ex rel. v. Judge, 49 La. Ann. 1454; Fremont v. Crippen, 10 Cal. 211; State ex rel. v. Hirzel, 137 Mo. 447; Gaither v. Watkins, 66 Md. 581; State ex rel. v. Aloe, 152 Mo. 466; Territory v. Valdez, 1 N. M. 533; Dunlap v. Railroad, 46 Mich. 190; Comstock v. Porter, 5 Wend. 98; Starr v. Trustees, 6 Wend. 566; Wood v. Randall, 5 Hill, 269; Krumeick v. Krumeick, 2 Green (N. J.) 39; People ex rel. v. Wilson, 17 Ill. 123. Many cases announce the conclusion that because there is an appeal provided therefore *certiorari* will not lie, but an examination thereof will disclose the fact that in all such cases the remedy by *certiorari* has been expressly taken away, or that the circumstances of the particular case, in the judgment of the court, did not justify the issuance of the writ.     Second. The courts hold that *mandamus* and prohibition are likewise to be granted or refused in the exercise of a sound judicial discretion—except at the suit of the King or of the State, acting by its proper officer. Fremont v. Crippen, 10 Cal. 211; LaGrange v. State Treas., 24 Mich. 476; People ex rel. Railroad v. Wilson, 17 Ill. 123; Strong's Case, 20 Pick. 484; State ex rel. v. Aloe, 152 Mo. 466; Havemeyer v. Superior Court, 84 Cal. 401. And there are many respectable authorities which declare that the discretionary stage has passed when the writ has issued and the record of the inferior court in response thereto has been certified—that it is then the duty of the court to hear and determine the cause. Ex parte Weston, 11 Mass. 417; Harris v. Barber, 129 U. S. 369; People v. Brooklyn Assessors, 39 N. Y. 81; People v. Brooklyn Com'rs, 103 N. Y. 370; Farmington Co. v. Com'rs, 112 Mass. 212; Mayor of London v. Coxe, 2 L. R. H. L. 280; West River Bridge v. Dix, 16 Vt. 446; Trainer v. Porter, Judges, 45 Mo. 336.     Third.     Moreover the common law authorities, whenever the question has been presented—as to whether or not an appeal or a writ of error will defeat the right to *certiorari*—are to the effect that even in cases where the

statute expressly declares that an appeal shall not be allowed from any judgment in the lower court or tribunal, and that the judgment of the lower court shall be final and that there shall be no intermeddling with such judgment by the superior courts by *certiorari*, that notwithstanding *certiorari* will lie to review all errors upon the face of the record which are jurisdictional in their nature, or which are necessary to be reviewed to determine whether the inferior tribunal has kept within due bounds, because the true function, object and purpose of the writ has always been to confine inferior tribunals within the limits prescribed by law and to determine whether or not they have exceeded their jurisdiction or usurped powers not belonging to them, or whether they had jurisdiction in the particular case to pronounce the judgment which appears at length upon the record certified by them to the superior court for review. Wood v. Randall, 5 Hill (N. Y.) 269; Groenwelt v. Burwell, 1 Salk. 144; Ex parte Heath, 3 Hill (N. Y.) 52; Ritter v. Kunkle, 39 N. J. L. 259; Hillman v. Stanger, 49 N. J. L. 192; In re Kennedy, 55 Vt. 1; People v. Judges, 24 Wend. 249; King v. Justices of Somersetshire, 6 Dowl. & Ryl. 471; People ex rel. v. Board, 39 N. Y. 8; King v. Judges, 8 Dowl. & Ryl. 733; People v. Three Judges, 24 Wend. 249; State ex rel. v. Dobson, 135 Mo. 19; State ex rel. v. Powers, 68 Mo. 320; State ex rel. v. St. Louis Co., 47 Mo. 594; State ex rel. v. Dowling, 50 Mo. 134; Owens v. Andrew Co. Ct., 50 Mo. 372; Rex v. Moreley, 2 Burr. 1042. (4) First. The words "any corporation" in section 2741, R. S. 1889, refer to a corporation invested by law with the power of eminent domain. Kansas City v. Vineyard, 128 Mo. 90. Second. If not, section 2741 is void being in conflict with section 13, art. XII, Mo. Const. because it restricts the power of eminent domain and places the property of a business corporation upon a higher plane than the property of individuals. (5) The action of the Macon county circuit court in refusing to appoint commissioners to estimate the damages which the

defendant, the Northwestern Coal and Mining Company, would sustain by reason of the taking of a right of way over its land part of one acre of ground, was a usurpation of power, an act entirely beyond its jurisdiction and outside of the limits fixed for it by law. The court might just as well refuse to appoint commissioners to condemn a right of way for a railroad over property belonging to an individual. In either case its action would be an arbitrary and willful refusal to perform a plain, positive duty. In all such cases *certiorari* is the most speedy and most effective remedy and the remedy given by the authorities, American and English—old and new. Cambridge v. R. R. Com'rs, 153 Mass. 161; Hawkeye Ins. Co. v. Duffie, 67 Iowa 175; Hamman v. Van Wagenman, 62 N. W. Rep. 795; Edgar v. Greer, 14 Iowa 211; Street v. Stuart, 38 Ark. 159; Railroad v. Young, 96 Mo. 39; People v. Board, 39 N. Y. 8; Snoddy v. Pettis Co., 45 Mo. 361; People v. Three Judges, 24 Wend. 249; King v. Judges, 8 Dowl. & Ryl. 733; Prosser v. Secor, 5 Barb. (N. Y.) 607; Stokes v. Knarr, 11 Wis. 389; St. Joseph Lead Co. v. Simms, 108 Mo. 222; Ex parte Smith, 135 Mo. 223; State ex rel. v. Dobson, 135 Mo. 1; State ex rel. v. St. Louis Co. Court, 47 Mo. 594; State ex rel. v. Powers, 68 Mo. 320; State ex rel. v. Dowling, 50 Mo. 134; Owens v. Andrew Co. Ct., 50 Mo. 372; Rex v. Moreley, 2 Burr. 1042; Rex v. Lloyd, 2 Stra. 999; Rex v. Liston, 5 D. & E. 340; Winter v. Litlebridge, 13 Price 533; Groenwelt v. Burwell, 1 Salk. 144; Railroad v. Suydan, 2 Har. (N. J.) 25; Baker v. Superior Court, 12 Pac. Rep. 685; Ritter v. Kunkle, 39 N. J. L. 259; Hillman v. Stanger, 49 N. J. L. 192; In re Kennedy, 55 Vt. 1; People v. Judges, 24 Wend. 249; King v. Justices of Somersetshire, 6 Dowl. & Ryl. 471; Rex v. Moreley, 2 Burr. 1042; Ex parte Heath, 3 Hill. (N. Y.) 52; Wood v. Randall, 5 Hill (N. Y.) 269; King v. Inhab. Standard Hill, 4 Maule & S. 378; Com. v. Sheldon, 3 Mass. 187; Parks v. City of Boston, 8 Pick. 218; Starr v. Trustees, 6 Wend. 566; Hawk. Pl. C. 218, cap. 76, f. 80;

North Ala. Dev. Co. v. Orman, 71 Fed. Rep. 764; Hayford v. Co. Com'rs, 78 Me. 155; People v. Walsh, 33 Hun. (N. Y.) 345; Hall v. Superior Court, 71 Cal. 550; Swann v. Mayor, 8 Gill. (Md.) 153; Rex v. Justices, 3 Dowl. & Ryl. 273; Hall v. State, 12 G. & J. (Md.) 338; Stokes v. Knarr, 11 Wis. 393; Roberts v. Warren, 3 Wis. 736; Combs v. Dunlap, 19 Wis. 591; Carnall v. Crawford Co., 11 Ark. 627.   (6)   The method of review is immaterial; it may as well be by *certiorari* as by appeal or writ of error—and all of these stand upon an equal footing under the grant of appellate jurisdiction in sec. 2, art. VI, Mo. Const.   Clark v. Ross, 1 Ill. 262; Crane v. Giles, 3 Kan. 55; Ex parte Railroad, 39 Ark. 87; Marbury v. Madison, *supra*; Weston v. City, 2 Pet. 464; U. S. v. Hamilton, 3 Dal. 17; Ex parte Crane, 5 Pet. 190; Sikes v. Ransom, 6 Johns. 279; State ex rel. v. St. Louis Court of Appeals, 97 Mo. 283; Story's Const. (5 Ed.), sec. 1761.

*Ben Eli Guthrie* and *Dysart & Mitchell* for respondent.

(1)   The relator's motion to quash the judgment rendered by the circuit court in the condemnation proceeding, should be overruled, and respondent's motion to quash the writ of *certiorari* sustained.   Where a writ of *certiorari* has been improperly granted, the proper course is for the court on hearing to dismiss or quash the same.   Harris on *Certiorari*, sec. 64, p. 48.   The writ of *certiorari* does not ordinarily issue to a court of general jurisdiction proceeding according to the course of common law, where the cause is removable to the Supreme Court on appeal or writ of error.   The writ only issues to a circuit court in cases where it has some special function to perform, not in the course of the common law, and where no appeal or writ of error is allowed, such as the removal of an officer, *habeas corpus*, and similar special jurisdiction.   State ex rel. v. Smith, 101 Mo. 174; State ex rel. v. Edwards, 104 Mo. 125; State ex rel. v. Slover, 113 Mo.

210; State ex rel. v. Dobson, 135 Mo. 1; State ex rel. v. Gill, 137 Mo. 627; State ex rel. v. Valliant, 123 Mo. 524; Harris on *Certiorari*, sec. 44, p. 37.   (2)   On a petition by a railroad company to condemn real estate, it devolves upon the circuit court to try the issues raised by the pleadings up to and prior to the appointment of commissioners to assess damage. In such trial the circuit court proceeds in accordance with the course of the common law, the same as if trying any other issues of law or fact.   St. Joe Terminal Ry. Co. v. H. & St. Joe Railway Co., 94 Mo. 535; Lind v. Clemens, 44 Mo. 540; City of Hopkins v. Railroad, 79 Mo. 98; County Court v. Griswold, 58 Mo. 189; St. Louis v. Franks, 78 Mo. 41.   It is not the duty of the circuit court to appoint commissioners on the proof alone that the plaintiff railroad company is a railroad corporation, but it must try the issues raised by the pleadings, as to whether it is a proper case in which to appoint commissioners.   The circuit court in this case, on a trail of the issues raised by the pleadings, refused to appoint commissioners and found the issues in favor of the defendant.   In this the circuit court did not act without jurisdiction, nor transcend its jurisdiction, and if it erred in its finding and decision, the relator had its right to an appeal or writ of error. (3)   Appeals and writs of error are warranted in condemnation proceedings.   State ex rel. v. Edwards, 104 Mo. 126; Railroad v. Evans, 85 Mo. 323; Railroad v. Railroad, 94 Mo. 542.   (4)   Generally where an appeal or writ of error is available to a party, he can not have the writ of *certiorari*. This rule is elementary.   Britton v. Steber, 62 Mo. 370; State ex rel. v. Valliant, 123 Mo. 524; State ex rel. v. Edwards, 104 Mo. 125; State ex rel. v. County Court, 45 Mo. App. 387; Birdsall v. Philips, 17 Wend. 464; Harris on *Certiorari*, sec. 44, p. 37 and note.   The case of the State ex rel. v. Switzler, 143 Mo. 287, does not announce a different doctrine.   In that case the question of the propriety or power to issue the writ was not raised.   Besides, there was no appeal

provided by law from the assessment of the probate court for a succession tax. Laws 1897, p. 236, sec. 1a; State ex rel. v. County Court, 80 Mo. 500; Doolittle v. Railroad, 14 Ill. 381. (5) This court will not review and hear this case upon its merits. That is not the office of the writ of *certiorari*. If so, any and all cases tried in the circuit court could be reviewed and heard in this court without a resort to an appeal or writ of error. When reviewed upon its merits in this court, the defendants in the condemnation proceeding will be entitled to be heard. This rule is elementary. State ex rel. v. County Court, 45 Mo. App. 387; State ex rel. v. County Board, 108 Mo. 242; Harris on *Certiorari*, sec. 102, p. 76 and sec. 82, p. 65.

BRACE, J.—This is a proceeding by *certiorari*.

The relator is a railroad corporation, organized under article 2, chapter 42, Revised Statutes 1889, for the purpose of building, operating and maintaing a standard gauge railroad from a point in, at, or near the town of Bevier, in Macon county, to a point in, at, or near, the town of Ardmore, in said county.

On the 17th of April, 1899, the relator filed in the circuit court of said county its petition under the provisions of article 6 of said chapter, to condemn a right of way for its railroad "along and across one acre of ground south of the bridge over Sulphur Creek in Macon county, and for about thirteen hundred feet along the east side of the eastern railroad track of the Northwestern Coal & Mining Company, and south of one acre of land aforesaid, and also a crossing over said eastern railroad track of said Coal & Mining Company at a point south of the thirteen hundred foot strip of ground." The petition was in the usual form, naming the Northwestern Coal & Mining Company, W. S. Watson, The United States Trust Company, The Kansas & Texas Coal Co., James C. Strean and R. C. Rombauer as defendants, and praying for the

appointment of commissioners to assess their damages. Summons thereon was duly issued, and served, and upon the return day thereof the said Northwestern Coal & Mining Company and W. S. Watson filed separate answers thereto. The answer of the Northwestern Coal & Mining Company, after putting in issue the allegations of the petition, contained the following plea:

"Further answering this defendant says that it is informed and believes and so charges the fact to be that the plaintiff is not a public railroad corporation and has no intention to build and own a public railway built for public use and benefit, but that the plaintiff corporation has been promoted and organized by and is owned by and belongs to the defendant The Kansas & Texas Coal Company; that said coal company and said railway have the same officers and directors, and largely, if not entirely, the same stockholders.

"That the defendant The Kansas & Texas Coal Company is a coal corporation and as such owns and controls a large number of coal mines and a large amount of coal lands lying in the townships of Bevier (township 56, range 14, and township 57, range 15) and Chariton (township 56, range 15), that is to say, about the city of Bevier and about Ardmore and between said places; that said coal company for its own private benefit and for no other purpose whatever, promoted, organized and is managing and controlling said coal railway and as such secured the said incorporation, and as such is maintaining this proceeding to condemn the right of way over this defendant's land; that said coal company has put up and furnished all the money, means and capital of the said coal railway; that on May 12, 1898, the said coal railway executed to The St. Louis Trust Company its mortgage on all its rights, tracks, property and franchises of every kind and description as trustee for the said coal company, in consideration that the said coal company would loan and did loan the said coal railway $70,000, for which it executed to said coal company its note of that date.

"And this defendant says that the only business, purpose, object and use of said alleged railroad is the private use, benefit, interest and advantage of the said coal railroad and that there is no other business, use or demand existing for the building of said alleged railroad. So this defendant says that it is a fraud upon the law and in contravention of the rights of the owners of property to suffer and allow said railroad company to use the right and power of eminent domain to condemn the private property and land of this defendant or of any other person.

"Defendant says that it is a coal corporation doing a mining business near Bevier and as such owns the land over which plaintiff intends to condemn a right of way for its alleged railroad; that as appears from the plat filed with plaintiff's petition it has constructed and owns in connection with the defendant Watson a railroad along and over said lands; that said railroad was built at a large expense and outlay of money in order to carry on and conduct defendant's business of mining coal, and it has along said railroad a shaft sunk to its mines and from said mines and shaft are taken daily many tons of coal which this defendant by means of its said railroad conveys to the Hannibal & St. Joseph Railroad for shipment to the markets; that said shaft was sunk and said mines were built and constructed at the cost of many thousands of dollars to this defendant and are of great value. This defendant says that it has for its railroad and the operation of its business thereon, only a right of way of forty feet which it has purchased for that purpose and that all of said forty feet is necessary for the proper operation of its mines and its railroad and that they can not successfully and conveniently be operated with a less width of right of way than defendant has bought and paid for; that plaintiff's proposed right of way, as appears from its plat filed with its petition, is within seven feet of the center line of defendant's line as now laid down and operated on said premises; that if said proposed

track be condemned this defendant's business will be largely, if not wholly, destroyed and there will be no room for turn outs, side tracks, passing tracks, storage tracks and other necessary structures and buildings necessary for the proper and profitable use and operation of its said mines.

"And so this defendant says that plaintiff can not under the guise of building a railroad condemn the track and right of way of this defendant and thereby destroy its business for the benefit of its rival and competitor in business, The Kansas & Texas Coal Company, to which the said plaintiff belongs.

"Defendant further says that the defendant Watson is a part owner in defendant's said railroad and owns and operates a mine some half mile beyond the plaintiff's said mine, which said mine is known as Watson's Mine No. 2; that defendant's said railroad extends on to said Watson's Mine No. 2, at which mine said Watson is conducting and carrying on a mining business and daily takes from said mine many tons of coal which are sent over said railroad by defendant's mine to the Hannibal & St. Joseph Railroad to be shipped to the markets, and the condemnation of the alleged right of way described in plaintiff's petition would not only ruin and destroy defendant's railroad and cripple and injure defendant's business, but would also ruin and destroy the interest of the said Watson in the said railroad and also cripple and injure said Watson and cut him off from said Hannibal & St. Joseph Railroad and would in fact reduce this defendant and the said Watson to the necessity of securing an approach to said Hannibal & St. Joseph railroad upon the use of plaintiff's alleged railroad, and subject them to the prices, extortions and monopoly of the said plaintiff and its owner, the said Kansas & Texas Coal Company, the rival and competitor in business of this defendant and the said Watson.

"And further answering this defendant says that there exists no necessity for the plaintiff to locate and establish its alleged railroad upon the line and track marked out and

described in its petition for the reason that this defendant is informed and believes and charges the fact to be that plaintiff or its owner, The Kansas & Texas Coal Company, owns a right of way one hundred feet wide adjoining and along the north and east side of defendant's right of way on which plaintiff could well and easily construct and build and operate its railroad without interfering with any right or the business of this defendant.

"And so this defendant says that it is wholly inequitable, unjust and contrary to law and good conscience to allow the plaintiff to proceed to condemn and construct and build its railroad upon the line marked out in plaintiff's petition and the accompanying plat, since the same is not for public use but solely and only for the use, benefit, advantage and emolument of the plaintiff, the said Kansas & Texas Coal Company; and defendant says that its business would be irreparably injured and its damage could in no adequate sense be computed or estimated, and its business would be greatly injured, not to say ruined, by allowing plaintiff to build and construct its railroad upon the line marked out or to condemn plaintiff's property for the purpose of such construction.

"Wherefore defendant prays the court that it will dismiss plaintiff's petition; that it will refuse to appoint commissioners to assess damages; that it will restrain and enjoin the plaintiff from condemning or attempting to condemn a right of way for its alleged railroad on and along the line described in its petition and marked out in the plat accompanying said petition or upon defendant's right of way and premises mentioned in said petition, and will restrain and forever enjoin the said plaintiff from building its said railroad upon said line as prayed in its petition, and for all other orders, judgments and decrees that may to the court seem equitable and right, and for general relief."

The answer of Watson was to the same purport, adopted

the answer of the Northwestern Coal & Mining Co., and joined in its prayer for relief.

Afterwards, on the 13th of June, 1899, the issues coming on to be heard in said circuit court before the respondent, the Hon. Nat. M. Shelton, judge thereof, on motion of relator for the appointment of commissioners as prayed for in the petition, judgment thereon was rendered as follows:

"And now the court having heard all of the evidence introduced by plaintiff and defendants for and against the motion of plaintiff for the appointment of commissioners herein to assess damages for the taking of the strip of land herein sought to be condemned, and being fully advised in the premises, doth order and adjudge that plaintiff is not entitled to such appointment, and overrules said motion and finds the issues herein for the defendants. And it is further ordered, adjudged and decreed, that plaintiff take nothing by its suit, and that defendants recover their costs herein expended and have therefor execution, and plaintiff objects and excepts to the action of the court at the time."

Afterward on the 2d of October, 1899, on the application of relator to one of the judges of this court the writ of *certiorari* now under consideration, was issued, directed to the respondent; to which in due time respondent made return, certifying a complete transcript of all the proceedings in the matter aforesaid in his court, from which the foregoing facts appear. Thereupon relator, on the 24th of October, 1899, filed its motion to quash the judgment aforesaid and remit the record with directions to the circuit court to appoint commissioners in said cause, and the respondent on the 9th of November, 1899, filed his motion to quash the writ. Thus the questions for determination are raised.

This writ of *certiorari* is prosecuted, not as an auxiliary to an appeal, or writ of error, but as an original writ to quash the judgment in the circuit court, and in support thereof,

the relator in its motion to quash, assigns the following reasons:

"First.   That the judgment aforesaid, in form aforesaid, is illegal and void in this, because said judgment is founded upon an erroneous, illegal and improper construction of section 2741 of the Revised Statutes of Missouri, said court holding that an ordinary business corporation, a coal company, as shown by the pleadings in this case, as well as by evidence, was entitled to claim protection of said section when the taking of the property sought to be condemned materially interfered with the use to which by law said coal company was authorized to subject the same.

"Second.   Because the evidence preserved of record shows that the taking of the property sought to be condemned would not materially interfere with the uses to which by law said coal company was authorized to subject said lands.

"Third.   Because section 2741 of the Revised Statutes of Missouri, if susceptible of the construction given thereto by the circuit court of Macon county, Missouri, is unconstitutional, illegal and void in this, that said section confers upon an ordinary business corporation an immunity from the exercise of the right of eminent domain by any corporation vested with that power, whereas any property owned by an individual is subject to the right of condemnation and has no such immunity; thereby denying to individuals the equal protection of the law, contrary to the fourteenth amendment of the Constitution of the United States and to section 30 of article 2 of the Constitution of this State.

"Fourth.   Because such a construction of section 2741 of the Revised Statutes of Missouri of 1889 is contrary to section 4, article 12 of the Constitution of this State, which declares that 'the exercise of the power and right of eminent domain shall never be so construed or abridged as to prevent the taking, by the General Assembly, of the property and franchises of incorporated companies already organized, or

that may hereafter be organized, and subjecting them to the public use, the same as that of individuals.'

"Fifth. Because such a construction of section 2741 of the Revised Statutes of Missouri of 1889, deprives the Kansas & Texas Coal Railway, the plaintiff in the cause aforesaid in the circuit court of Macon county, Missouri, of the benefits of section 13 of article 12 of the Constitution of this State, which is the following: 'Any railroad corporation or association, organized for the purpose, shall have the right to construct and operate a railroad between any points within this State, and to connect at the State line with railroads of other States. Every railroad company shall have the right, with its road, to intersect, connect with or cross any other railroad, and shall receive and transport each the other's passengers, tonnage and cars, loaded or empty, without delay or discrimination.'

"Sixth. Because such a construction of section 2741 deprives the Kansas & Texas Coal Railway, the plaintiff in the said cause in the circuit court of Macon county, of an opportunity to construct the railway it is authorized to construct under the provisions of its charter and the Constitution and laws of Missouri.

"Seventh. Because the construction of section 2741 of the Revised Statutes of Missouri of 1889 given thereto by the circuit court of Macon county, and especially the construction given to the words 'any corporation' is, in fact, a declaration that any business corporation, whether vested with the power of eminent domain or not, can defeat the exercise of eminent domain when attempted by a corporation vested therewith simply because the defendant in the condemnation proceeding is an ordinary business corporation—all of which is contrary to the legal and proper construction of said section, and the words "any corporation" in said section plainly refer to a corporation vested with the power of eminent domain.

"Eighth. Because such construction of said section 2741

is contrary to the well known rule of law which is that all
sections of a statute (that is to say, all of the sections of
article 6 of chapter 42 of the Revised Statutes of Missouri
of 1889) should be construed together, and when thus con-
strued it plainly appears that said section only refers to cor-
porations having the power of eminent domain."

That the judgment should be quashed for these reasons,
counsel for relator maintains, in an able and elaborate brief,
in which many cases are cited from this and other jurisdic-
tions. With most of the propositions of law announced in
the brief, we have no fault to find. The common law writ
of *certiorari*, however, has been so modified by statute or
usage in most jurisdictions, and its application and use have
been so well defined by a long line of consistent decisions
in this State running from Rector v. Price, 1 Mo. 198, de-
cided in 1822, to State ex rel. v. Stephens, 146 Mo. 662,
decided in 1898, that from thence can well be drawn the
principles decisive of the question in hand, without recourse
to authority from abroad.

That the circuit court of Macon county had jurisdiction
of the subject-matter of the controversy in this condemnation
proceeding, is beyond question. [R. S. 1889, secs. 2543,
2734 et seq.; State ex rel. v. Edwards, 104 Mo. 125; State
ex rel. v. Railroad, 100 Mo. 59; St. Joe Term. R. R. Co. v.
H. & St. Joe R. R. Co., 94 Mo. 535, and cases cited.] It
appears from the record that Watson and the Northwestern
Coal & Mining Company, by their answers to the summons,
raised the question in that proceeding, whether their lands
were subject to condemnation, and whether the use to which
it was sought to condemn such lands was a public use. These
were judicial questions, upon which the court had jurisdiction
to pass. [St. Joe Term. R. R. Co. v. H. & St. Joe R. R.
Co., 94 Mo. 535; City of Savannah v. Hancock, 91 Mo. 54.]
And this must be conceded, for unless the court in refusing
to appoint commissioners acted judicially, *certiorari* would

VOL. 154 mo—44

not lie. [In re Saline County Subscription, 45 Mo. 52; State ex rel. v. Harrison, 141 Mo. 18, loc. cit.]

In St. Joe Term. R. R. Co. v. H. & St. Joe R. R. Co., 94 Mo. loc. cit. 542, it was said, per BLACK, J., speaking for the court:

"The circuit court seems to have supposed that its powers under the statute were limited to an investigation of such question as relate alone to the amount of damages; and this is the position taken by the respondent, to which we do not agree. It is open to the trial court, in these proceedings to condemn property for public use, to determine whether the use sought to be made of the property is really a public use. [City of Savannah v. Hancock, 91 Mo. 54.] This may involve the hearing of evidence, though ordinarily it does not. Again, the law denies to a telegraph company the right to appropriate the land upon which certain buildings are situated, and to a railroad company the right to appropriate more than a defined quantity of land for depot purposes; and it restricts the use to which one corporation may subject the property of another. If it appears on the face of the petition that the petitioner seeks to violate any of these provisions of the law, the petition should be rejected. If these or any other valid objections to the condemnation exists in point of fact, but do not appear on the face of the petition, they may be brought forward and interposed as a defense by any appropriate pleading; and, if necessary to a full consideration of the issue, evidence may be heard. It has been the constant practice to present these and kindred questions in the circuit court, and of this court to review the rulings thereon when the whole case is before the court on appeal or writ of error. [Lind v. Clemens, 44 Mo. 540; City of Hopkins v. Railroad, 79 Mo. 98; County Court v. Griswold, 58 Mo. 189; City of St. Louis v. Franks, 78 Mo. 41.]

"It is true the statute makes no specific provision for raising these or like issues, but it is utterly unreasonable to

say that the defendant must be notified when the petition will be heard, and yet when he appears, he can not be heard to show that the petitioner has no right to condemn the particular property for the alleged use."

It is equally clear that the judgment of the circuit court refusing to appoint commissioners and dismissing the relator's petition, was a final judgment from which an appeal or writ of error would lie. [State ex rel. v. Edwards, 104 Mo. 125; St. Joe Term. R. R. Co. v. H. & St. Joe R. R. Co., 94 Mo. 535, and cases cited; St. Louis & San F. R. R. Co. v. Evans, & Howard Brick Co., 85 Mo. 307, and cases cited.]

The objections of the relator to the judgment are not, and could not, be predicated on a want of jurisdiction in the circuit court to commit the errors of which it complains, but on the fact that the court in adjudicating in a matter wherein it had jurisdiction, did in fact commit those errors. Now, while *certiorari* is the appropriate remedy where an inferior tribunal acts without jurisdiction or in excess of its jurisdiction, or when within its jurisdiction, but the action of such inferior tribunal can not be reviewed on appeal or writ of error [State ex rel. v. Stephens, 146 Mo. 622; State ex rel. v. Switzler, 143 Mo. 287; State ex rel. v. Harrison, 141 Mo. 12; State ex rel. v. Madison Co. Court, 136 Mo. 323; State ex rel. v. Dobson, 135 Mo. 1; State ex rel. v. Slover, 113 Mo. 202; C., R. I. & P. R. R. Co. v. Young, 96 Mo. 39; Han. & St. Joe R'y Co. v. State Board of Equalization, 64 Mo. 294; Snoddy v. County of Pettis, 45 Mo. 361; Rector v. Price, 1 Mo. 198]; yet in this State the law is also well settled that it can not be used as a substitute for appeal or writ of error; and that, where such tribunal has jurisdiction and its action can be reviewed by appeal or writ of error, *certiorari* will not lie. [State ex rel. v. Gill, 137 Mo. 627; State ex rel. v. Valliant, 123 Mo. 524; State ex rel. v. Board of Equalization, 108 Mo. 235; State ex rel. v. Edwards, 104 Mo. 125; State ex rel. v.

Southern R'y Co., 100 Mo. 59; H. & St. Joe R. R. Co. v. Morton, 27 Mo. 317; Boren v. Welty, 4 Mo. 250.]

As was said by BURGESS, J., in Ward v. Board of Equalization, 135 Mo. loc. cit. 319: "It is well settled that the writ of *certiorari* only brings up the record, and only such matters as appear from the face thereof, and which go to the jurisdiction of the tribunal, to which the writ is sued out, can be reviewed by such writ." By SHERWOOD, J., in State ex rel. v. Smith, 101 Mo. loc. cit. 175: "This writ, under constitutional provisions, is strictly the common law writ of that name; it only brings up the record, and can only reach errors or defects which appear on the face of the record of the tribunal to which it is issued, and which are jurisdictional in their nature (Railroad v. State Board, 64 Mo. 294;)" and by the same judge, in State ex rel. v. Dobson, 135 Mo. loc. cit. 20: "The power of this court is as comprehensive in this respect over inferior courts in this State, as was the court of King's Bench in England in a similar way. And on many occasions has this superintending control been exercised by this court from the earliest days of its history down to the present time, in keeping circuit and other courts within the compass of their legitimate jurisdiction, and in preventing them from transcending the bounds of their lawful authority . . . . . . . Our inquiries, however, are limited under the common law practice which prevails in this State, to such errors as are of record and jurisdictional in their character." By BLACK, J., in State ex rel. v. St. Louis Court of Appeals, 99 Mo. loc. cit. 221: "The writ can not be awarded for the simple purpose of correcting errors, if any there were. It must clearly appear that the court of appeals has exceeded its legitimate powers." By MACFARLANE, J., in State ex rel. v. Edwards, 104 Mo. loc. cit. 126: "The office of a common law writ of *certiorari* is to bring the record of the proceedings of an inferior court or tribunal before a superior court to determine whether it had acted legally and within its juris-

diction . . . . . . . It is in the nature of a writ of error to review the proceedings of the inferior court or tribunal, and is only allowed where no appeal or writ of error or other available mode of review is afforded.    [Railroad v. Young, 96 Mo. 41; Poe v. Machine Works, 24 W. Va. 517; Ennis v. Ennis, 110, Ill. 78; Hauser v. State, 33 Wis. 678; 46 Ga. 41, 47 Ark. 511."

See, also, State ex rel. v. Walbridge, 69 Mo. App. 657; State v. Schneider, 47 Mo. App. 669; State ex rel. v. Moniteau Co. Ct., 45 Mo. App. 387.

Other cases in this jurisdiction might be added, but enough have been cited to show that the rule in this State is well established, and in entire harmony with the general rule prevalent on this subject thus stated in 4 Ency. of Plead. & Prac. 98:   "At common law, and in those States which have not departed materially therefrom, the accepted doctrine is, that where a tribunal has jurisdiction a writ of *certiorari* does not lie to correct mere errors in the exercise of such rightful jurisdiction.    Such errors may be generally corrected by appeal, for which process *certiorari* can not be substituted."   As all the errors complained of in the condemnation proceeding under consideration can be corrected by appeal or writ of error, it follows that *certiorari* does not lie.   The motion of the relator to quash the judgment should be overruled, and the motion of the respondent to quash the writ should be sustained, and it is accordingly so ordered.

All concur except *Sherwood*, *J.*, absent, and *Marshall*, *J.*, dissenting.

MARSHALL, J. (*Dissenting.*)—I dissent in this case, but shall content myself, at this time, with stating the principles of law upon which I base my dissent, without elaboration and without an analysis of the decisions in this and other jurisdictions upon this subject.   The exhaustive and conclusive brief of counsel for relator cites the multitude of cases

which support a right to a writ of *certiorari* under circumstances like those present in this case.

My reasons, briefly stated, are these:

I.   *Certiorari* lies to review the action of inferior courts where they have no jurisdiction, or where having jurisdiction they exceed it, or where they proceed in the exercise of jurisdiction in a manner outside of the course of the common law.

2.   It lies wherever an appeal or writ of error does not lie.

3.   It is a discretionary writ and not a writ of right.

4.   It lies in cases where an appeal or writ of error also lies, if, in the discretion of the court issuing it, an appeal or writ of error would not afford an adequate, efficient and speedy remedy, such as the circumstances of the case demand.

5.   It lies *before* as well as *after* a final judgment. Originally in England, it was only employed *before* final judgment, but its uses have since been extended there and in America to cases *after* final judgment.

The cases supporting the foregoing principles are cited and discussed in Harris on *Certiorari* and in the brief of counsel for relator.

Applying these principles to the case at bar the result is this:

A.   The relator is vested by the Constitution with the power of eminent domain, and sought to exercise it.

B.   The right of eminent domain is a summary remedy, and its enforcement is outside of the procedure in ordinary civil actions.

C.   The right was denied the relator in this case by the circuit court, which refused to appoint commissioners and dismissed relator's case.

D.   The relief open to relator by appeal can not be obtained sooner than two years, in the usual course of cases in this court, unless the case is advanced on the docket, which

State ex rel. v. Shelton.

is only done in cases involving a public interest. Therefore an appeal does not afford an adequate remedy in this case, and hence *certiorari* will lie.

E. The writ being discretionary, the court has power to protect itself from improper or improvident applications for its aid.

F. Being a constitutional, original remedy, it was intended to be applied by this court in aid of its superintending control over all inferior courts; and being a summary writ the power of the court is complete to grant it, in proper cases, notwithstanding an appeal or writ of error also affords a remedy which is inadequate because not speedy enough.

The better reason and the weight of authority is opposed to the conclusion announced in the majority opinion in this case.

For these reasons I dissent from that opinion and think this is preeminently a proper case for such a writ.